DELBERT W. COLEMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ROSE MEISEL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Coleman v. Commissioner
Docket Nos. 12336-80; 12337-80.
United States Tax Court
T.C. Memo 1989-248; 1989 Tax Ct. Memo LEXIS 248; 57 T.C.M. (CCH) 493; T.C.M. (RIA) 89248; May 22, 1989. *248 Henry G. Zapruder, Roger A. Pies, and David J. Fischer, for the petitioners. Michael D. Wilder and Paulette Segal, for the respondent. CLAPP
MEMORANDUM OPINION CLAPP, Judge: This case is before us on petitioners' Motion for Leave To File Motion Under Rule 161 Out of Time, filed April 14, 1988, and Motion to Reopen Record or For an Evidentiary Hearing and Memorandum in Support Thereof, lodged April 14, 1988. Respondent filed a Notice of Objection to Petitioners' Motion for Leave to File Motion Under Rule 161 Out of Time on October 17, 1988. On April 13, 1987, we filed our opinion in this case, which is reported at . We will briefly summarize the facts of the case which involved a computer sale-leaseback. On June 30, 1975, Bari (a partnership in which petitioners were partners) entered into an agreement to purchase computer equipment for $ 25,000,000. Bari made a $ 1,900,000 cash down payment on the equipment and obligated itself to repay the remaining $ 23,100,000 pursuant to a nonrecourse note. Payments on the note would be made over 96 months, with the final payment consisting of a $ 6,500,000 balloon payment *249 on June 30, 1983. On June 30, 1975, Bari also entered into an agreement to lease the equipment back to the seller for 96 months. The lease payments made to Bari were greater than the repayments on the loan. If all payments were made as required, Bari would recover $ 50,240 cash in excess of its $ 1,900,000 cash downpayment by the time that the balloon payment became due. Because we believed it was fully dispositive of the case, the only issue we considered was whether Bari acquired sufficient benefits and burdens of ownership to be treated as the owner of the equipment for Federal income tax purposes. In this regard, we attached much weight to the relationship between the reasonably expected residual value of the equipment and the amount of the balloon payment due at the end of the lease term. Both parties presented expert testimony on the residual value issue. Respondent's expert was Frederic G. Withington (Withington). In preparing his residual value forecast, Withington relied on documents and reports which he had prepared in February 1974, February 1975, and May 1975. Withington concluded that the residual value was between $ 1,892,093 and $ 2,292,093. Petitioners' *250 expert was Svend Hartmann (Hartmann). He projected the residual value of the equipment to be between $ 2,467,000 and $ 8,580,000. The original appraisals at the time of purchase had been done by Robert Lew (Lew). Because Lew did not testify as an expert witness, and because we were not presented with sufficient facts to determine whether his appraisals were reasonable, we did not consider his residual values in making a decision in the case. For various reasons, we decided that Withington's residual values were in line with those that would have been predicted by a competent expert in 1975. Accordingly, Bari could not have reasonably expected to pay the $ 6,500,000 balloon payment at the end of the lease term if it had sought an expert appraisal in 1975. We concluded that Bari never acquired the benefits and burdens of ownership and, accordingly, never acquired ownership of the computer equipment for Federal income tax purposes. Before the trial, petitioners had subpoenaed Withington to produce "any report, study, appraisal, analysis, commentary or other document, prepared by you (in whole or in part) or prepared or reviewed (in whole or in part) under your direction or supervision, *251 during the period commencing January 1, 1970 and ending on December 31 1976 * * * which discusses, analyzes, comments upon, or expresses your opinions or conclusions" on issues pertaining to the relevant computer equipment. Subsequent to our decision in the case, petitioners discovered a letter written by Withington on November 19, 1973, which apparently was not produced in response to the subpoena. Petitioners argue that the information in this letter suggests that a realistic residual value of the computer equipment in 1983 would have been from $ 7,457,315 to $ 9,866,641. Petitioners accordingly ask us to reopen the record in the case to receive this letter or, in the alternative, to hold an evidentiary hearing for the purpose of determining whether the record should be reopened to receive the letter and any other evidence discovered in the hearing. In the memorandum accompanying their motion, petitioners discuss Withington's valuation of both IBM 360 computer equipment and IBM 370 computer equipment. Petitioners assert that at trial Withington attached a zero residual value to the IBM 360 equipment because "his contemporaneous reports showed values ranging from less than 5 percent *252 to less than 10 percent of the original list price of the equipment for 1980, followed by carets, which purportedly indicated a 'disorderly market,' during which Mr. Withington would not predict any residual value." Petitioners allege that this zero residual value is contradicted by the newly discovered letter in which Withington said that "further decay in market value of System/360's will result in average values approximating 25% of IBM's original purchase price in 1977 decaying to about 10% in 1980. At this point the market will become very thin because there will be relatively few buyers, but some transactions in the 10%-15% range will occur in 1980 and even beyond." Petitioners take the midpoint (5 to 7.5 percent) of the 10- to 15-percent range in this letter, multiply this times the original price of the Bari equipment, and conclude that the figures in Withington's letter would lead to residual values of $ 3,625,106 to $ 5,437,661. Petitioners misunderstand Withington's letter. When Withington says that the market will "become very thin," but with "some transactions in the 10%-15% range * * * even beyond" 1980, we believe he means that one would be unlikely to find a buyer *253 after 1980, but if a buyer was found one might get a price in the 10- to 15-percent range. Thus, the letter is consistent with Withington's testimony at trial regarding a "disorderly market." There is nothing in the letter to support petitioners' view that Bari could reasonably expect to receive a price in the 5- to 7.5-percent range. The other computer equipment was IBM 370 equipment. At trial, Withington testified that the residual value of the 370-135 equipment would be 15 percent ($ 1,892,093 to $ 2,292,093), and the 370-155 equipment would be zero. Petitioners point out that Withington's 1973 letter said that the 370-135 would have a 35- to 45-percent value in 1980 and a 10- to 15-percent value in 1985. The letter does not mention the 370-155 model. Petitioners take a weighted average of the 35- to 45-percent value in 1980 and the 10- to 15-percent value in 1985 and conclude that the residual value in 1983 should have been 20 to 23 percent. They multiply this percentage times all of the IBM 370 equipment (both 370-135 and 370-155, not just the 370-135 equipment mentioned in the letter), and arrive at a residual value of $ 3,528,410 to $ 4,057,671. Again, we must disagree *254 with petitioners' interpretation of the letter. In 1973, Withington predicted that the 370-135 equipment would have a 10-to 15-percent residual value in 1985. At trial, Withington said that in 1975 he would have predicted a 15-percent residual value in 1983. Thus, between 1973 and 1975 Withington accelerated from 1985 to 1983 the time at which he believed a 15-percent residual value would be reached. Given the rapidly changing nature of the computer market and the problems involved in predictions of future value, we do not find surprising such a change in residual value. We conclude that Withington's 1983 letter is consistent with, and supports, his testimony at trial. However, even if Withington's 1973 letter caused us to reject his testimony regarding residual values, our holding in the case would be unchanged. Hartmann's residual values ranged from $ 2,467,000 to $ 8,580,000. The midpoint of this range is $ 5,523,500, which is far below the $ 6,500,000 balloon payment that Bari would have had to make in 1983. We accordingly conclude that even the residual values of petitioners' own expert would lead us to disregard the transaction for tax purposes. A court will not grant *255 a motion to reopen the record unless, among other requirements, the evidence relied on is not merely cumulative or impeaching, the evidence is material to the issues involved, and the evidence probably would change the outcome of the case. ; , cert. denied . Petitioners have, however, largely used the 1973 letter to impeach Withington's credibility. In addition, to the extent their use of the letter is material to the substantive issues in the case, it is cumulative since other similar evidence was introduced at trial. Finally, as seen above, the introduction of the letter at trial would not have changed the outcome of the case. We grant petitioners' Motion for Leave to File Motion Under Rule 161 Out of Time. We deny petitioners' Motion to Reopen Record or For an Evidentiary Hearing and Memorandum in Support Thereof. An appropriate order will be issued.