114 T.C. No. 19

UNITED STATES TAX COURT

MICHAEL B. BUTLER AND JEAN BUTLER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27554-96.                    Filed April 28, 2000.

P and H filed a joint 1992 Federal income tax
return on which H failed to report income from an S
corporation in which he was a shareholder.  R issued a
notice of deficiency jointly to P and H who in response
filed a joint petition in this Court.  H conceded that
his share of the income from the S corporation was
improperly omitted from the return.  In the petition, P
alleged that she was entitled to innocent spouse relief
pursuant to sec. 6013(e), I.R.C.  After trial, Congress
enacted sec. 6015, I.R.C., and simultaneously repealed
sec. 6013(e), I.R.C.  The parties agreed to treat P's
claim pursuant to sec. 6013(e), I.R.C., as an election
pursuant to sec. 6015(b)(1), I.R.C., which R denied.
Additionally, after trial, P requested that R consider
equitable relief pursuant to sec. 6015(f), I.R.C.  R
considered P's request but denied P equitable relief.
P seeks to reopen the record to introduce evidence as
to P's ability to qualify for proportionate innocent
spouse relief pursuant to sec. 6015(b)(2), I.R.C.

P contends that she is an innocent spouse pursuant to sec. 6015(b)(1), I.R.C. Additionally, P contends that it was an abuse of R's discretion not to allow equitable relief pursuant to sec. 6015(f), I.R.C. Alternatively, P contends that she is entitled to proportionate relief, pursuant to sec. 6015(b)(2), I.R.C., for a portion of the omitted income. P contends that the Tax Court has jurisdiction to review R's determination that P is not entitled to equitable relief pursuant to sec. 6015(f), I.R.C. R contends that P is not entitled to innocent spouse relief pursuant to either sec. 6015(b)(1), I.R.C., or sec. 6015(f), I.R.C., and contends that we do not have jurisdiction to review R's denial of relief pursuant to sec. 6015(f), I.R.C.

Held: P had reason to know of the understatement on P's and H's joint return, and, therefore, P is not entitled to innocent spouse relief, pursuant to sec. 6015(b)(1), I.R.C.

Held, further, P's motion to reopen the record to introduce evidence as to P's ability to qualify for proportionate innocent spouse relief pursuant to sec. 6015(b)(2), I.R.C., is denied.

Held, further, On the basis of the evidence in the record, P is not entitled to proportionate innocent spouse relief pursuant to sec. 6015(b)(2), I.R.C.

Held, further, The Tax Court has jurisdiction to review for abuse of discretion R's decision to deny P's request for equitable relief pursuant to sec. 6015(f), I.R.C.

Held, further, R's denial of P's request for equitable relief was not an abuse of discretion.

Robert H. Culton II, for petitioners.

Michael D. Zima, for respondent.

OPINION

WELLS, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1992 in the

amount of $26,720 and an addition to tax pursuant to section 6651(a)(1)[1] in the amount of $4,008.

After concessions, the issues to be decided[2] are: (1) Whether Jean Butler (petitioner) is entitled to innocent spouse relief pursuant to section 6015(b) relating to the understatement of tax on petitioners' 1992 joint Federal income tax return; (2) whether the record in the instant case should be reopened to receive additional evidence regarding petitioner's ability to qualify for proportionate innocent spouse relief pursuant to section 6015(b)(2); and (3) whether this Court has jurisdiction to review for abuse of discretion respondent's denial of P's request, pursuant to section 6015(f), for equitable innocent spouse relief and, if so, whether it was an abuse of respondent's discretion to deny such relief.

## Background

Some of the facts have been stipulated for trial pursuant to Rule 91. The parties' stipulations are incorporated into this Opinion by reference and, accordingly, are found as facts in the

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Respondent determined that petitioners were liable for an addition to tax pursuant to sec. 6651(a)(1). At trial, however, petitioners advanced no argument as to the addition to tax and failed to address the issue on brief. Consequently, we conclude that petitioners have abandoned any contention as to the addition to tax. See Bernstein v. Commissioner, 22 T.C. 1146, 1152 (1954), affd. per curiam 230 F.2d 603 (2d Cir. 1956).

instant case. When they filed their petition, petitioners resided in Longwood, Florida.

Petitioners were married at the time they filed their petition, are currently married, and have always had a "smooth" marital relationship. Petitioner Michael B. Butler (petitioner's husband) has always applied all of his income toward the benefit of his family. Throughout their 35-year marriage, petitioner's husband has never concealed any assets from petitioner and has always told her about his financial endeavors.

Petitioner's husband operates a lucrative surgical practice in three Florida locations: Orlando, Apopka, and Altamonte Springs. Petitioner's family lived quite comfortably, with a very high standard of living, during 1992. They paid $19,963 in home mortgage interest during 1992, making their monthly mortgage payment more than $1,600. Their average monthly electricity bill during 1992 was greater than $275, and their average monthly phone bill was more than $100. Petitioner had credit cards from various upscale department stores, including Saks Fifth Avenue, Jacobsen's, Nieman Marcus, Dillard's, and Burdines. During the 8 months of 1992 for which petitioner provided canceled checks, petitioner spent $5,162.55 at such department stores. During 1992, petitioner also had credit cards at Sears and Montgomery Ward department stores, and had a Visa Gold charge card.

Petitioner and her husband were members of the Orlando Opera Guild.

Petitioner's husband works at his surgical practice on an average of more than 70 hours per week. During 1992, petitioner worked with her husband as a medical transcriber, earning $11,700 in wages. Petitioner graduated from St. Louis University in 1960 with a degree in medical records administration. Because she had more free time, petitioner maintained the family's checking account and handled the bills for all of the household expenses. She usually retrieved the mail because she arrived home earlier than her husband.

Petitioner oversees the operation of JCB Construction, Inc. (JCB), an S corporation of which she has been the sole owner since its creation in 1987. As secretary-treasurer of JCB, petitioner maintains its books and records, keeps track of income and expenditures, handles payroll and personnel responsibilities, writes checks for materials and supplies, and collects information for the preparation of JCB's tax returns. JCB filed Forms 1120S with the Internal Revenue Service (IRS) from 1988 through 1996, and FICA and FUTA returns since at least 1989. The gains or losses of JCB were reported on petitioners' Federal income tax returns for the year at issue and in prior years.

B.G. Enterprises, Inc. (BGE) was an S corporation owned by petitioner's husband and Thomas George. BGE was engaged in the

foliage nursery business in Apopka, Florida, on land owned jointly by petitioners. In 1990, BGE rented the Apopka property from petitioners and operated the nursery, as Sweetwater Greenery, from that time until some time in 1992. Petitioner's husband and Thomas George were each 50-percent shareholders of BGE. Petitioner never favored petitioner's husband's involvement with the nursery, and their discussions on the subject were usually contentious.

During mid-December 1990, BGE applied a fungicide called Benlate, manufactured by E.I. DuPont De NeMours and Co. (Dupont), to its plant inventory for protection against fungi. The Benlate treatments damaged the foliage, prompting BGE to seek damages from Dupont. Petitioner's husband told petitioner that he was going to Atlanta during August 1991 to negotiate a claim for damages against Dupont. BGE and Dupont reached a settlement (settlement) whereby Dupont paid BGE a total of $812,411 (settlement proceeds). The damage award represented compensation for three items: Crop damage in the amount of $367,046, replacement costs of $55,244, and business interruption of $390,121. Dupont paid BGE $455,000 during 1991 and $357,411 during 1992. After expenses, BGE received net proceeds of $158,759 from Dupont during 1992. Because BGE did not reenter the nursery business after the destruction of its inventory, most of the money BGE received was not spent on replacements. BGE

paid JCB to remove unsalvageable plants and other waste materials from the nursery premises.

The exact amount of the distributions from BGE to petitioner's husband during 1992 is unknown, and petitioner has provided insufficient evidence to fully account for the settlement proceeds. The record contains no documents illustrating where the distribution of money from BGE to petitioner's husband was deposited during 1991 or 1992. Petitioner failed to explain the use of the following funds: $40,000 paid to petitioner's husband on January 14, 1992, from the escrow account holding the settlement proceeds; another $23,654 disbursed from the escrow account to petitioner's husband on March 31, 1992; and $5,238.47 which remained in the escrow account as of March 24, 1998. Petitioner offered only 8 monthly bank statements from petitioner and her husband's personal joint bank account for 1992. Petitioner failed to offer statements or canceled checks from any of petitioner's and her husband's other bank accounts. Petitioners held a bank account throughout 1992 at Southern Bank of Florida. Petitioners did not produce bank statements relating to that account from the periods March 12 to April 12, 1992, from May 12 to July 12, 1992, from August 12 to September 12, 1992, and from December 12 to December 31, 1992. Petitioners failed to offer any bank statements or other financial records from petitioner's husband's surgical practice.

Petitioners filed a joint Federal income tax return for 1988. By September 16, 1991, they owed $109,580.82 on their 1988 income tax liabilities. Notices of Federal Tax Lien concerning that joint liability were filed during the fall of 1991. On October 4, 1991, petitioners' 1989 Federal income tax return was filed on their behalf approximately 1 year late. They had filed and received two extensions of time in which to file their 1989 return. No payment was made with the filing of the 1989 return, and, on November 4, 1991, the IRS assessed penalties for a failure to pay estimated tax and for late filing. During the winter and spring of 1992, the IRS recorded Notices of Federal Tax Lien against petitioners relating to their 1989 return. Petitioners' 1990 joint Federal income tax return was filed on their behalf on December 17, 1991, 8 months late. On December 17, 1991, penalties for the late filing and for failure to pay estimated tax were assessed against petitioners. During the Spring of 1992, the IRS recorded Notices of Federal Tax Lien concerning petitioners' 1990 joint tax liability.

In the notice of deficiency sent to petitioners in the instant case, respondent determined that petitioners failed to include flowthrough income from BGE in the amounts of $79,380 and $18 on their 1992 joint Federal income tax return. Petitioners concede that the flowthrough from BGE for petitioner's husband's share of the net settlement proceeds ($79,380) received by BGE

during 1992 was not reported on petitioners' 1992 Federal income tax return.[3]  Petitioners also concede the receipt of $18 in interest income during 1992 from BGE which was not reported on their 1992 Federal income tax return.

Discussion

Petitioners filed their petition in the instant case in response to a notice of deficiency.  In the petition, petitioner claimed that she was entitled to innocent spouse relief pursuant to section 6013(e).  After the trial and briefing of the instant case, Congress enacted section 6015 as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), 112 Stat. 685, 734, and simultaneously repealed section 6013(e).  The effective date of new section 6015 is July 22, 1998.  Accordingly, petitioner can no longer seek relief pursuant to section 6013(e).  The parties, however, have treated the petition as an election of relief pursuant to section 6015(b)(1).[4]  The parties agreed to waive any right to a new trial for the purpose of section 6015 and concede that the issues that were tried pursuant to section 6013(e) are the same issues the Court should decide pursuant to section 6015(b)(1) except,

---

[3]  Petitioner's husband testified that he did not know why the income from BGE was omitted from petitioners' 1992 joint Federal income tax return.

[4]  We treat petitioner's innocent spouse claims pursuant to sec. 6015 as an amendment to the petition to conform the petition to the evidence.  See Rule 41(b).

however, that petitioner contends that she is entitled to reopen the record for the Court to receive evidence as to petitioner's entitlement to proportionate relief pursuant to section 6015(b)(2), and except that petitioner contends that she is entitled to equitable relief pursuant to section 6015(f).

Petitioners' Claim for Innocent Spouse Relief Pursuant to Section 6015(b)(1)

Generally, spouses filing a joint tax return are each fully responsible for the accuracy of their return and for the full tax liability.  See sec. 6013(d)(3).  The innocent spouse provisions of section 6015 provide exceptions to the general rule in certain circumstances.  Section 6015 provides, in pertinent part, as follows:

SEC. 6015.  RELIEF FROM JOINT AND SEVERAL LIABILITY ON JOINT RETURN.

(a)  In General.--Notwithstanding section 6013(d)(3)--

(1) an individual who has made a joint return may elect to seek relief under the procedures prescribed under subsection (b) * * *

\*     \*     \*     \*     \*     \*     \*

(b)  Procedures for Relief from Liability Applicable to All Joint Filers.--

(1) In general.--Under procedures prescribed by the Secretary, if--

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

(2) Apportionment of relief.--If an individual who, but for paragraph (1)(C), would be relieved of liability under paragraph (1), establishes that in signing the return such individual did not know, and had no reason to know, the extent of such understatement, then such individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to the portion of such understatement of which such individual did not know and had no reason to know.

Former section 6013(e) is, for the most part, the same as new section 6015(b), but there are important differences. For example, new section 6015(b)(2) explicitly provides for proportionate relief, although former section 6013(e) did not have an explicit provision for such relief. Additionally, unlike former section 6013(e), which encompassed only substantial understatements attributable to grossly erroneous items, new section 6015(b) encompasses any understatement. Despite the

differences between the former provision and the new one, cases interpreting old section 6013(e) remain instructive as to our analysis of whether a taxpayer "knew or had reason to know" of an understatement pursuant to new section 6015(b).

Of the several elements necessary for innocent spouse relief listed in new section 6015(b)(1), the parties in the instant case have presented only the issue of whether petitioner had reason to know of the understatement on petitioners' 1992 tax return. Cases arising pursuant to former section 6013(e) provide that the spouse seeking relief has reason to know of an understatement if a reasonably prudent taxpayer in his or her position, at the time he or she signed the return, could be expected to know that the return contained an understatement or that further investigation was warranted. See Kistner v. Commissioner, 18 F.3d 1521, 1524 (11th Cir. 1994),[5] revg. and remanding T.C. Memo. 1991-463; Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63. The spouse seeking relief has a "duty of inquiry". Stevens v. Commissioner, supra at 1505. In deciding whether a spouse "has reason to know" of an understatement, we undertake a subjective inquiry, and we recognize several factors that are relevant to our analysis, including: (1) The alleged innocent spouse's level of education;

---

[5] The instant case, absent stipulation to the contrary, is appealable to the Court of Appeals for the Eleventh Circuit.

(2) the spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past income levels, income standards, and spending patterns; and (4) the culpable spouses's evasiveness and deceit concerning the couple's finances. See Kistner v. Commissioner, supra at 1524.

As to the first factor, level of education, petitioner earned a college degree in medical records administration from St. Louis University. She also owned and operated her own construction business (JCB) that was, like the corporation in which her husband was a shareholder (BGE), an S corporation. Petitioner was primarily responsible for JCB's day-to-day affairs. She collected the information with which to file tax returns for JCB and signed those tax returns. Consequently, we believe that she must have been familiar with the manner in which income of an S corporation flows through to the individual shareholders for Federal tax purposes. Although petitioner testified that she had nothing to do with petitioner's husband's nursery business during its existence, she admitted that she was the secretary-treasurer of Sweetwater Greenery, Inc. (the bankrupt predecessor company of BGE and the initial S corporation operating the foliage nursery). By 1992, petitioner had considerable experience in business and financial matters. At a minimum, given her experience in the family's financial affairs,

her knowledge of the settlement between BGE and Dupont, and her apparent experience and knowledge of the tax implications of doing business as an S corporation, petitioner should have inquired into whether the flowthrough of income from the Dupont settlement with BGE was properly accounted for on petitioners' return.  Accordingly, petitioner's education and experience weigh heavily against allowing innocent spouse relief to petitioner.

As to the second factor, involvement in the family's finances, petitioner had full responsibility for maintaining the family checkbook and for writing checks to pay the household bills.  Petitioner's husband worked late, and petitioner was entrusted with substantial control over the household bank accounts and budgeting.  Because petitioner usually retrieved the mail, she had first access to the bank statements mailed to petitioners' residence.  Moreover, petitioners had been having considerable difficulties with the IRS concerning earlier taxable years.  Petitioner played a significant role in gathering the documents and materials necessary for petitioners' accountants to prepare their tax returns.  Given the difficulties petitioner and her husband had with the IRS, and her involvement in preparing the tax returns, petitioner should have had a heightened awareness about the accuracy of petitioners' 1992 tax return.

Although respondent requested petitioners to provide the bank statements from all of their bank accounts for 1992,

petitioner produced only 8 of the 12 1992 bank statements from their joint personal account, and they produced no statements from any of the other accounts they held. The failure to introduce such evidence leads us to conclude that it would not have been helpful in proving petitioner's innocent spouse claim. The evidence pertaining to petitioner's involvement in her family's finances weighs heavily against petitioner.

As to the third factor, unusual or lavish expenditures, although the record demonstrates that petitioner enjoyed a high standard of living during 1992 and maintained accounts at various upscale department stores where she made significant purchases, there is no evidence in the record indicating whether such expenditures were out of the ordinary when compared to petitioners' spending habits in prior years. Accordingly, the evidence pertaining to unusual and lavish expenditures neither supports nor weakens petitioner's claim for innocent spouse relief.

As to the fourth factor, whether petitioner's husband was evasive about his finances, he never attempted to hide any of his income or assets from petitioner. In his own words, he "always told her about everything he was involved in." All of his income was applied toward the benefit of the family. Consideration of this factor weighs against innocent spouse relief.

We also think it significant that petitioner had actual knowledge of the Dupont settlement with BGE. Petitioner's husband informed petitioner of the damage claim prior to his departure for the Atlanta settlement negotiations. At trial, petitioner admitted knowledge of the settlement. Thomas George, the other shareholder of BGE, testified that he informed petitioner of the Dupont settlement negotiations between BGE and Dupont on several occasions. Although the amount may not have been determined by that point, we believe there is little doubt that petitioner knew that there was going to be a substantial settlement. We fail to believe that petitioner's husband would negotiate a settlement that would allow him to walk away from the financial misery of the nursery with money left over without telling his wife at least minimal facts about its nature and scope. Petitioner testified that she never approved of his involvement in the nursery business. Their discussions on the subject were almost always argumentative. If there was anything that petitioner's husband would likely discuss about the nursery with petitioner, we believe it would be the good news that the settlement was finally going to bail out petitioner's husband from the financial woes of his involvement in the nursery business. At a minimum, the foregoing was sufficient to trigger petitioner's duty of inquiry.

In sum, consideration of the foregoing factors leads us to believe that petitioner should have known of the understatement on petitioners' 1992 tax return.  At a minimum, petitioner's knowledge of the settlement and the tax consequences of S corporations placed on her the duty to inquire about the amount of the settlement and the flowthrough of petitioner's husband's share of BGE's income as it might affect petitioners' 1992 tax return.  Consequently, we hold that petitioner is not entitled to innocent spouse relief pursuant to section 6015(b)(1).

Petitioner's Motion To Reopen the Record To Introduce Evidence of Her Ability To Qualify for Proportionate Relief Pursuant to Section 6015(b)(2)

Petitioner requests that we reopen the record in the instant case to submit evidence as to petitioner's qualification for relief pursuant to new section 6015(b)(2).  Reopening the record for the submission of additional evidence lies within the discretion of the Court.  Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971).  A court will not grant a motion to reopen the record unless, among other requirements, the evidence relied on is not merely cumulative or impeaching, the evidence is material to the issues involved, and the evidence probably would change the outcome of the case.  See Coleman v. Commissioner, T.C. Memo. 1989-248 (citing Edgar v. Finley, 312 F.2d 533 (8th Cir. 1963)).  Petitioner's motion to reopen the record does not describe in any way the evidence she would offer.

See Rule 50(a) (stating that motions "shall state with particularity the grounds therefor."). Additionally, petitioner fails to explain in any way how the evidence would support petitioner's claim for proportionate innocent spouse relief pursuant to new section 6015(b)(2). Accordingly, we hold that reopening the record is not warranted in the instant case, and petitioner's motion will be denied. Moreover, based on the evidence in the record, we hold that petitioner does not qualify for proportionate innocent spouse relief.

## The Tax Court's Authority To Review the Commissioner's Discretion as Exercised Pursuant to Section 6015(f)

Petitioner asked respondent to consider equitable relief pursuant to section 6015(f), which request respondent denied. Respondent contends that the Tax Court has no authority to review the Commissioner's denial of petitioner's request for equitable relief pursuant to section 6015(f). We disagree with respondent.

As a part of our traditional authority in deficiency proceedings, we have jurisdiction in the instant case to review respondent's denial of equitable relief. Petitioner raised her claim for innocent spouse relief in a petition for redetermination filed pursuant to section 6213(a). In a proceeding to redetermine asserted deficiencies, we may take into account all facts and circumstances that bear upon the deficiency as they affect petitioner, including petitioner's affirmative defense that she is entitled to innocent spouse treatment. See

secs. 6212-6214; <u>Estate of Mueller v. Commissioner</u>, 101 T.C. 551, 556 (1993); <u>Woods v. Commissioner</u>, 92 T.C. 776, 784 (1989).  In the context of a deficiency proceeding, a claim for innocent spouse relief historically has been an affirmative defense that must be set forth in the pleadings.[6]  See Rule 39; <u>United States v. Shanbaum</u>, 10 F.3d 305, 311 (5th Cir. 1994); <u>Roberts v. Commissioner</u>, T.C. Memo. 1993-98; <u>Lerch v. Commissioner</u>, T.C. Memo. 1987-295, affd. 877 F.2d 624 (7th Cir. 1989); <u>Connelly v. Commissioner</u>, T.C. Memo. 1982-644.   A taxpayer is entitled to raise an affirmative defense to respondent's deficiency determination.  See <u>Estate of Mueller</u>, <u>supra</u> at 556; <u>Woods v. Commissioner</u>, <u>supra</u> at 784.

In <u>Naftel v. Commissioner</u>, 85 T.C. 527, 533 (1985), we held that where a taxpayer files a petition for a redetermination of a deficiency, we take jurisdiction over the entire tax liability, not just the items determined to be erroneous in the notice of deficiency.  Consequently, where a taxpayer raises an affirmative defense to a deficiency determination, we need no additional basis for our authority to render an opinion on such issues because the affirmative defense is part of the deficiency proceeding over which we have jurisdiction.  See Rule 39. Accordingly, in the instant case, our authority to review

---

[6]   We equate the affirmative defense of innocent spouse available pursuant to former sec. 6013(e) with the rights afforded taxpayers by sec. 6015.

petitioner's affirmative defense that she is entitled to innocent spouse treatment is governed by our general jurisdiction to consider any issue which affects the deficiency before us.  See sec. 6213.  Petitioner's innocent spouse claim is one such issue.

Respondent argues that section 6015(e) precludes judicial review of claims made pursuant to subsection (f) and limits judicial review only to claims made pursuant to subsections (b) and (c).  Respondent contends, inter alia, that the references in section 6015(e)(3) and (4) to subsections (b) and (c), coupled with silence with regard to subsection (f), evidence an intent by Congress to segregate proceedings involving subsection (f) from proceedings involving subsections (b) and (c).  Respondent contends that the foregoing statutory scheme, as well as the express language of the statute, evidence a congressional intent to preclude judicial review of determinations made by the Commissioner pursuant to section 6015(f).  Alternatively, respondent argues that the Commissioner's determinations pursuant to subsection (f) are "committed to agency discretion" by law.

This Court has stated that there exists a strong presumption that the actions of an administrative agency are subject to judicial review.  See, e.g., Mailman v. Commissioner, 91 T.C. 1079, 1082 (1988); Estate of Gardner v. Commissioner, 82 T.C. 989, 994 (1984).  Agency action is exempt from judicial review only:  (1) Where the governing statutes expressly preclude such

review, or (2) where the action is "committed to agency discretion" by law.  5 U.S.C. sec. 701(a)(1984); <u>Estate of Gardner</u>, <u>supra</u> at 995.

As to respondent's argument that section 6015 precludes judicial review, we disagree.  Section 6015(e), in relevant part, provides:

(e) Petition for Review by Tax Court.

(1) In general.--In the case of an individual who elects to have subsection (b) or (c) apply--

(A) In general.--The individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed during the 90-day period beginning on the date on which the Secretary mails by certified or registered mail a notice to such individual of the Secretary's determination of relief available to the individual. * * *

*       *       *       *       *       *       *

(3) Applicable rules.--

*       *       *       *       *       *       *

(B) Res Judicata.  In the case of any election under subsection (b) or (c), if a decision of the Tax Court in any prior proceeding for the same taxable year has become final, such decision shall be conclusive except with respect to the qualification of the individual for relief which was not an issue in such proceeding.  The exception contained in the preceding sentence shall not apply if the Tax Court determines that the individual participated meaningfully in such prior proceeding.

*       *       *       *       *       *       *

(4) Notice to other spouse.  The Tax Court shall establish rules which provide the individual filing a joint

return but not making the election under subsection (b) or (c) with adequate notice and an opportunity to become a party to a proceeding under either such subsection.

We find nothing in section 6015(e) that precludes our review of respondent's denial of equitable relief to petitioner. Indeed, section 6015(e) states that, where a taxpayer elects to have either subsection (b) or (c) apply, the taxpayer "may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section". Sec. 6015(e)(1)(A). (Emphasis added). In Woodral v. Commissioner, 112 T.C. 19, 22-23 (1999), we held that the phrase "this section" in section 6404(g) includes all subsections of 6404.

Moreover, the legislative history supports our interpretation that section 6015 does not limit our authority to review the Commissioner's determinations pursuant to section 6015(f). The House report states: "The bill specifically provides that the Tax Court has jurisdiction to review any denial (or failure to rule) by the Secretary regarding an application for innocent spouse relief." H. Rept. 105-364, Part I, at 61 (1997). (Emphasis added). The Senate report provides:

The Tax Court has jurisdiction of disputes arising from the separate liability election. For example, a spouse who makes the separate liability election may petition the Tax Court to determine the limits on liability applicable under this provision. [S. Rept. 105-174, at 56 (1998).]

The Conference report states that it follows the "House bill and the Senate amendment in establishing jurisdiction in the Tax Court over disputes arising in this area."  H. Conf. Rept. 105-599, at 251 (1998).  In short, there is no language in either the statute or the legislative history that precludes our review of the Commissioner's denial of equitable relief pursuant to section 6015(f) where the taxpayer has made the requisite election for relief pursuant to section 6015(b) or (c).  But see In re Mira, 245 Bankr. 788 (Bankr. M.D. Pa. 1999).

We also disagree with respondent's argument that the Commissioner's authority to grant equitable relief pursuant to section 6015(f) is "committed to agency discretion by law."  The "committed to agency discretion" exception to the general rule of judicial review is a very narrow one.  (Estate of Gardner v. Commissioner, supra at 995, citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971)).  The exception applies only in those rare instances in which a statute is drawn in terms so broad that there is no law to apply.  See id. Whether there is law to apply turns on pragmatic considerations as to whether an agency determination is the proper subject of judicial review.  See id.  In Mailman v. Commissioner, supra at 1082-1083, we stated:

To determine whether an action has been committed solely to agency discretion, we have followed the standards followed in other Federal courts. Only in cases in which it can be found that the existence of broad discretionary power is not appropriate for judicial review, or that the agency determination involves political, economic, military, or other managerial choices not susceptible to judicial review, or that the agency determination requires experience or expertise for which legal education or the lawyer's skills provide no particular competence for resolution and for which there are no ascertainable standards against which the expertise can be measured, have the courts refrained from reviewing administrative discretion.

None of the foregoing circumstances, where action is committed solely to agency discretion, are present in the instant case. Our review does not involve political, economic, military, or other managerial choices not susceptible to judicial review.

Respondent argues that there is no ascertainable standard upon which to review respondent's discretionary denial of relief pursuant to section 6015(f). We disagree. The language of section 6015(f)(1), "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)" does not differ significantly from the language of section 6015(b)(1)(D), "taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement". Indeed, the language of section 6015(f)(1) does not differ significantly from the language of former section 6013(e)(1)(D), "taking into account

all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement".

We have consistently applied a "facts and circumstances" analysis in considering the application of former section 6013(e)(1)(D). See Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979); French v. Commissioner, T.C. Memo. 1996-38; Bouskos v. Commissioner, T.C. Memo. 1987-574. In Kistner v. Commissioner, T.C. Memo. 1995-66, on remand from the Court of Appeals for the Eleventh Circuit, we discussed the particular standards to be applied when deciding the appropriate relief pursuant to section 6013(e)(1)(D). Accordingly, we are well equipped to decide whether it was an abuse of discretion for respondent to deny relief to petitioner under section 6015(f). See Local 1219, Am. Fed. of Gov. Employees v. Donovan, 683 F.2d 511, 516 (D.C. Cir. 1982) ("This limited determination is one which courts are well-equipped to make.").[7]

On the basis of the foregoing, we conclude that we have the authority to review respondent's denial of petitioner's claim for equitable relief pursuant to section 6015(f). We discuss below whether it was an abuse of discretion for respondent to deny petitioner's equitable relief claim.

---

[7] We note that respondent in Rev. Proc. 2000-15, 2000-5 I.R.B. 447, announced certain standards by which respondent will evaluate an equitable relief request.

<u>Whether Respondent Appropriately Denied Petitioner Equitable</u>
<u>Spouse Relief Pursuant to Section 6015(f)</u>

On February 4, 1999, petitioner submitted a Form 8857, Request for Innocent Spouse Relief, to the IRS. The Form 8857 was forwarded to the IRS Appeals Office, and the claim was assigned to an Appeals Officer who, after meeting with petitioner, made petitioner a settlement offer that petitioner rejected. In a September 22, 1999, letter, the Appeals Officer informed petitioner that he had determined that petitioner is not entitled to relief pursuant to either subsection (b)(1) or (f) of section 6015.

Section 6015(f) provides as follows:

> (f) Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
> > (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
> >
> > (2) relief is not available to such individual under subsection (b) or (c),
>
> the secretary may relieve such individual of such liability.

In deciding above whether petitioner qualified for relief pursuant to section 6015(b)(1), we have held that petitioner had reason to know of the understatement of tax on petitioners' 1992 return. The parties stipulated that petitioner's husband always kept petitioner informed about everything in which he was involved. Indeed, we have found that petitioner was fully

engaged in the family's finances.  Moreover, the record does not demonstrate that there would be any economic hardship to petitioner if relief were not granted.  Petitioner remains married to her husband and is living with him in the same household.  Additionally, there is no evidence that petitioner's husband has ever abused petitioner in any manner.  Petitioner's husband has always applied all of his income toward the benefit of his family.  At her meeting with the IRS Appeals Officer, petitioner did not come forward with any additional evidence that would support her claim for equitable relief.  In short, there were no compelling reasons in the instant case for respondent to grant petitioner equitable relief.  Consequently, we hold that it was not an abuse of discretion for respondent to deny petitioner's claim for equitable relief pursuant to section 6015(f).

To reflect the foregoing,

<u>An appropriate order will be issued and decision will be entered for respondent.</u>