T.C. Summary Opinion 2008-49

UNITED STATES TAX COURT

ANDREA C. CASULA, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3385-05S.                    Filed May 5, 2008.

Paul Kalinich (specially recognized), for petitioner.

Mayer Silber, for respondent.

GOLDBERG, Special Trial Judge: This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed. Pursuant to section
7463(b), the decision to be entered is not reviewable by any
other court, and this opinion shall not be treated as precedent
for any other case. Unless otherwise indicated, subsequent
section references are to the Internal Revenue Code in effect for

the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This cases arises from petitioner's request for relief from joint income tax liability for the taxable year 2000. A notice of deficiency was not issued. Petitioner filed Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief), seeking relief under section 6015(f). Respondent denied petitioner's request, and the sole issue for decision is whether respondent abused his discretion.

## Background

The stipulation of facts and the attached exhibits are incorporated herein by reference. At the time the petition was filed, petitioner resided in Illinois.

Petitioner married Christopher Casula (Mr. Casula) on April 23, 1963. On the day of the trial--April 23, 2007--petitioner and Mr. Casula (the Casulas) were celebrating their 44th wedding anniversary.

From 1963 through 1983, Mr. Casula worked for Montgomery Ward. During this time, he received his M.B.A. from the Kellogg School of Management at Northwestern University. Petitioner was not employed outside of the home between 1963 and 1983.

Mr. Casula ended his employment with Montgomery Ward in 1983 and began working as vice president for a Montgomery Ward subsidiary that same year. Mr. Casula was employed in this

capacity until approximately 1987, when he decided to start his own Internet-based customer service company.

At or around the time that Mr. Casula left Montgomery Ward petitioner entered the workforce, first with Northern Trust Bank and then with the firm of Marsh & McLennan.  Petitioner has worked for Marsh & McLennan for the past 20 years. The Casulas' tax return for 2000 lists petitioner's job title as "executive".

In 2000 Mr. Casula began experiencing business setbacks that prevented him from taking any salary whatsoever.  In order to help provide capital for his operation, Mr. Casula sought assistance from two personal funding sources; namely, employee stock held by petitioner in Marsh & McLennan and Mr. Casula's section 401(k) account.

At Mr. Casula's request, petitioner sold a portion of her Marsh & McLennan stock in 2000 for $16,375.  During the same year, Mr. Casula took an early distribution of $53,680 from his section 401(k) account.  Mr. Casula used the proceeds of these transactions for his business.

Mr. Casula's business continued to experience financial difficulties throughout 2001.  His difficulties were compounded by a series of medical problems that affected him and both of his parents.  Mr. Casula eventually decided to cease business operations in December 2001.  From 2001 through 2006 Mr. Casula

was unemployed and seeking work.  He presently works for a Washington, D.C.-based nonprofit organization.

The Casulas had an accountant prepare their 2000 Federal income tax return.  They filed a joint 2000 Form 1040, U.S. Individual Income Tax Return on April 13, 2002.  The Casulas reported total income of $120,978 from the following sources: (1) $50,304 of wages, salaries, tips, etc.; (2) $454 of ordinary dividends; (3) a $162 State tax refund; (4) $16,375 of capital gain; (5) a $51,659 IRA distribution; and (6) $2,023 of pensions and annuities.  From their $120,977 of adjusted gross income the Casulas subtracted $19,168 of itemized deductions and $5,600 of exemption deductions to arrive at $96,209 of taxable income, which resulted in a $19,981 tax.  After adding a $4,413 10-percent additional tax for an early IRA distribution, the total tax reported due was $24,394.  After they applied $4,954 in total payments, their return reported $19,440 tax due, but they remitted zero.  Respondent accepted the return and assessed additions to tax for late filing and failure to pay and interest on the balance due.  As of March 27, 2007, the total unpaid liability for taxable year 2000 is $19,986.65.  Petitioner submitted her Form 8857 on August 6, 2003, and respondent denied her request for relief on November 17, 2004.

## Discussion

Except as otherwise provided under section 6015, petitioner bears the burden of proof with respect to her entitlement to relief under section 6015.  See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

Section 6013(d)(3) provides that if a joint return is filed, the tax is computed on the taxpayer's aggregate income, and liability for the resulting tax is joint and several.  See also sec. 1.6013-4(b), Income Tax Regs.  Relief may be granted under section 6015 under limited circumstances.

Generally, in order to obtain relief from joint and several liability a spouse must qualify under section 6015(b) or, if eligible, allocate liability under section 6015(c).  The parties agree that petitioner is not entitled to seek relief under section 6015(b) or (c).  If relief is not available under section 6015(b) or (c), a spouse may seek equitable relief under section 6015(f).  Fernandez v. Commissioner, 114 T.C. 324, 329-331 (2000); Butler v. Commissioner, 114 T.C. 276, 287-292 (2000).

The Internal Revenue Service (IRS) may relieve an individual from joint and several liability under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable for any unpaid tax or deficiency and

she or he does not qualify for relief under section 6015(b) or (c).

As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying Rev. Proc. 2000-15, 2000-1 C.B. 447, that are to be used in determining whether it is inequitable to hold a requesting spouse liable for all or part of the deficiency.[1] Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, provides the following seven threshold conditions that must be satisfied before a request for relief will be considered: (1) The requesting spouse filed a joint return for the year for which relief is sought; (2) relief is not available under section 6015(b) or (c); (3) the application for relief is made no later than 2 years after the date of the Commissioner's first collection activity; (4) no assets were transferred between spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualifying assets to the requesting spouse; (6) the requesting spouse did not file or fail to file the return with fraudulent intent; and (7) absent enumerated

_____

[1]Rev. Proc. 2000-15, 2000-1 C.B. 447, was superseded by Rev. Proc. 2003-61, 2003-2 C.B. 296, which is effective as to requests for relief filed on or after Nov. 1, 2003, and for requests for relief pending on Nov. 1, 2003, as to which no preliminary determination letter had been issued as of that date. Although petitioner's application for relief was filed on Sept. 12, 2003, it was still pending on Nov. 1, 2003. The preliminary determination letter was issued on Nov. 17, 2004.

exceptions, the liability from which relief is sought is attributable to an item of the nonrequesting spouse. Respondent argues that because part of the unpaid liability stems from petitioner's sale of her Marsh & McLennan stock, this last threshold requirement has not been met. We agree. Where as here the requesting spouse might fail to qualify for relief under Rev. Proc. 2003-61, sec. 4.01, the Court, for the sake of completeness, will nevertheless examine whether we may grant relief under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298.

Rev. Proc. 2003-61, sec. 4.03(2), 2003-2 C.B. at 298, lists the eight nonexclusive factors that the Commissioner will consider in determining whether, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for all or part of the deficiency, and full or partial equitable relief under section 6015(f) should be granted. These nonexclusive factors include whether: (1) The requesting spouse is separated or divorced from the nonrequesting spouse; (2) the requesting spouse will suffer economic hardship without relief; (3) the requesting spouse did not know or have reason to know of the item giving rise to the deficiency; (4) the nonrequesting spouse had a legal obligation to pay the outstanding liability; (5) the requesting spouse received a significant benefit from the item giving rise to the deficiency; (6) the requesting spouse has made a good faith effort to comply

with income tax laws in subsequent years; (7) the requesting spouse was abused by the nonrequesting spouse; and (8) the requesting spouse was in poor mental or physical health when signing the return or requesting relief. Rev. Proc. 2003-61, supra, further provides that no single factor will be determinative, but that all relevant factors will be considered. We will now consider petitioner's request in the light of these relief factors.

The Casulas are still married, and therefore petitioner fails to meet the first factor.

With respect to the second factor, petitioner must show that she would be unable to pay basic reasonable living expenses if relief were not granted. See Monsour v. Commissioner, T.C. Memo. 2004-190. Being unable to pay basic reasonable living expenses would amount to economic hardship. Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. Petitioner was silent as to how respondent's denial of her request for relief would result in economic hardship. She is gainfully employed as an executive with Marsh & McLennan. The Court fails to see, and petitioner has neither raised as an issue nor established, that she would suffer economic hardship if her request for relief from joint liability were denied.

As to the third factor, as discussed earlier petitioner sold her Marsh & McLennan stock in 2000. Petitioner sold the stock at

the request of her husband, and therefore she had knowledge of the sale as well as the distribution taken from her husband's section 401(k) account. She also testified that she had actual knowledge of all of the items reported on the Casulas' 2000 tax return. Rev. Proc. 2003-61, sec. 4.03, specifically states that actual knowledge by the requesting spouse of the item giving rise to the deficiency is a strong factor weighing against relief. This strong factor may be overcome only if the factors in favor of equitable relief are particularly compelling. We conclude that they are not.

As the Casulas are still married, the fourth factor is inapplicable.

As to the fifth factor, we have insufficient evidence to determine whether petitioner received a substantial benefit when her husband purportedly used the proceeds of the sale of her Marsh & McLennan stock or his IRA distribution to help keep his business afloat. We are convinced that petitioner did not have access to Mr. Casula's business funds, although she did have access to the couple's personal checking account and there is evidence that both of these funds--the proceeds from the stock sale and the IRA distribution--were distributed to Mr. Casula's business through the couple's personal account. We also recognize that by using these funds to keep his business afloat Mr. Casula prevented the couple from losing their home or other

personal assets.  The Court is therefore convinced that the substantial benefit factor weighs against granting relief.

The sixth factor concerns compliance with income tax laws and, particularly, the good faith efforts of the requesting spouse in subsequent years.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi), 2003-2 C.B. at 299.  With respect to this inquiry, there is no evidence outside of the year at issue. Accordingly, we find this factor neutral.

As to the seventh factor, abuse, petitioner has offered no evidence that she suffered any abuse at the hands of her husband. Likewise, and as to the final factor, whether the requesting spouse seeking relief was in poor mental or physical health when signing the return, there is nothing in the record to show that petitioner suffered from any ailment that would have affected her ability to pay her Federal income tax obligation for the year in issue.  As these last two factors weigh only in favor of, and not against, relief, they are neutral.  Id. sec. 4.03(2)(b)(ii), 2003-2 C.B. at 299.

Accordingly, since none of the relevant factors identified in the pertinent revenue procedure weigh in favor of granting relief, the Court holds that there was no abuse of discretion by respondent in denying relief to petitioner under section 6015(f).

Decision will be entered

for respondent.