T.C. Summary Opinion 2014-99

UNITED STATES TAX COURT

KIMBERLY A. SORRENTINO, Petitioner, AND GEORGE A. CHAUDOIN,
Intervenor v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28772-11S.                          Filed September 24, 2014.

Jeffrey Lee Cohen, for petitioner.

George A. Chaudoin, pro se.

Jeremy D. Cameron, for respondent.


SUMMARY OPINION

GUY, Special Trial Judge:  This case was heard pursuant to the provisions

of section 7463 in effect when the petition was filed.[1]  Pursuant to section 7463(b),

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

By final notice of determination dated September 12, 2011, the Internal Revenue Service (IRS) denied petitioner's claim for relief from joint and several liability under section 6015 for tax year 2007. Petitioner filed with the Court a timely petition challenging the determination pursuant to section 6015(e)(1). Intervenor, petitioner's former spouse, filed a timely notice of intervention pursuant to section 6015(e)(4).

The issues for decision are (1) whether petitioner and intervenor filed a valid joint Federal income tax return for 2007 and, if so, (2) whether petitioner qualifies for relief under section 6015.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts, the first supplemental stipulation of facts, and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in Georgia at the time the petition was filed.

---

[1](...continued)
Revenue Code, as amended and in effect at all relevant times. Monetary amounts are rounded to the nearest dollar.

## I. General Background

Petitioner holds a bachelor's degree in communications from the University of Hawaii. At the time of trial she was employed as a sales representative at a computer software company.

Intervenor retired as a police officer in 1995 at the age of 30. At the time of trial he owned and managed a security business.

Petitioner and intervenor first met in 2004. They were married in October 2005 as part of a surprise orchestrated by intervenor at a Halloween party. At the time, intervenor's health was failing and he testified that he quickly arranged the wedding because he hoped that, if his illness proved fatal, petitioner would help his two adult children (from a prior marriage). During the short period that they were married, petitioner and intervenor resided in Tennessee.

## II. Household Finances

Petitioner and intervenor maintained separate bank accounts. At intervenor's request, petitioner paid $1,100 per month to him for her share of household expenses. Intervenor paid the household bills.

III.  Petitioner's Retirement Account Distributions

During 2007 petitioner received distributions of $79,114 and $15,970 from two of her retirement accounts.[2]  Petitioner deposited the proceeds in her bank account.

Petitioner testified that she transferred some of the retirement distribution funds to intervenor by check.  Intervenor contradicted petitioner, testifying that he was unaware that she received distributions from her retirement accounts and denying that she transferred any of the funds to him.

IV.  Volatile Relationship

Petitioner and intervenor had a dysfunctional and volatile marital relationship.  Petitioner testified that intervenor physically assaulted, offended, and humiliated her on numerous occasions.  Intervenor denied that he harmed petitioner in any way and asserted instead that petitioner physically assaulted and verbally abused him.

From 2000 until early 2007 petitioner worked for Cingular Wireless Employee Services (Cingular) as a data sales representative.  She was required to travel regularly, and she attended meetings and dinners with Cingular clients.

---

[2]The parties stipulated that petitioner had Federal income tax withholding of $11,250 in respect of the larger distribution.

Petitioner testified that intervenor did not approve of her work-related travel and repeatedly called her at work and frequently appeared at her office to harass her. Petitioner believed that her work performance suffered as a result of stress that she attributed to intervenor's abusive behavior. She lost her job with Cingular in 2007.

Later in 2007 petitioner worked for Novacopy, Inc., and Cox Auto Trader, Inc. She testified that she lost both jobs because of intervenor's disruptive behavior.

Intervenor denied that he had harassed petitioner at work.

## V. Separation and Divorce

Petitioner and intervenor first separated and initiated divorce proceedings in late 2006. The couple reconciled for a period in 2007.

In early March 2008, after a heated argument, petitioner packed a few of her personal belongings and left intervenor. Petitioner's sister, Tammy Hood, who was residing in Georgia at the time, received a phone call from petitioner that day. Ms. Hood testified that petitioner was emotionally distraught and told her that she was contemplating suicide. Concerned for her sister's well-being, Ms. Hood immediately drove to meet her in Alabama. After a short discussion, petitioner agreed to seek immediate treatment at a mental health facility in Georgia.

Petitioner received treatment as an inpatient from March 15 to 20, 2008, and as an outpatient from March 21 to 29, 2008.

On March 24, 2008, intervenor signed a marital dissolution agreement (dissolution agreement) and had it served on petitioner. Although petitioner did not take part in drafting the dissolution agreement and apparently was not represented by counsel at the time, she signed it on April 9, 2008. The dissolution agreement does not address the parties' tax filing obligations for 2007 but states that the parties would file separate tax returns for 2008 and years thereafter.

The couple's marriage was terminated on June 9, 2008, upon entry of a final decree of divorce.

VI. 2007 Tax Return

On August 7, 2008, the IRS received through electronic transmission a Form 1040, U.S. Individual Income Tax Return, for 2007, identifying intervenor and petitioner as joint filers. The return was prepared by Winnie Kemrick-Cate, a paid return preparer who had prepared petitioner and intervenor's joint income tax returns for the taxable years 2005 and 2006. Ms. Kemrick-Cate was not called as a witness at trial.

The return included various items of income and deduction attributable to petitioner and intervenor. Although the retirement account distribution of $79,114

that petitioner received during 2007 appears on the return, the item is reported to have been the subject of a nontaxable rollover. The return included a claim for a refund on an overpayment of $22,781.

Petitioner testified that she did not know that intervenor intended to file a joint tax return for the taxable year 2007 and that she played no role in preparing or filing the joint return. Petitioner maintains that she did not meet with Ms. Kemrick-Cate for purposes of filing the 2007 return and did not authorize her or intervenor to file a return on her behalf.

Petitioner did not file a separate tax return for 2007. She testified that when the 2007 return was due to be filed she was receiving medical treatment in Georgia and was focused on restoring a sense of normalcy in her life. She further testified that she believed enough income tax had been withheld from her wages and retirement distributions so that she did not need to file a 2007 return.

Intervenor testified that he and petitioner met with Ms. Kemrick-Cate in February or early March 2008--shortly before petitioner left him--to prepare a joint return for 2007. He further testified that he and petitioner reviewed and signed the return at that time. Intervenor testified that he subsequently was surprised the 2007 return was not promptly filed with the IRS and that he eventually visited Ms.

Kemrick-Cate's office in August 2008 to inquire about the status of the claimed refund.

The record does not include a copy of Form 8879, IRS e-file Signature Authorization. A document attached to an electronic copy of the return, however, indicates that intervenor signed an authorization on August 7, 2008, allowing Ms. Kermick-Cate to file the return electronically. There is no corresponding entry indicating that petitioner signed the authorization.

On September 1, 2008, intervenor received from the IRS a refund check of $17,505 for 2007.[3] He deposited the check in his separate bank account and did not transfer any part of the refund to petitioner.

VII. Notice of Deficiency

On September 28, 2009, the IRS mailed a notice of deficiency for 2007 to petitioner and intervenor at intervenor's address in Tennessee. The IRS determined in relevant part that the $79,114 distribution from petitioner's retirement account was includable in taxable income and that a second distribution of $15,970 to petitioner was includable in taxable income and omitted from the return. The IRS further determined additional tax pursuant to section 72(t), an

_____

[3]The balance of the $22,781 refund claimed on the return was applied to offset an outstanding tax liability for 2005.

addition to tax under section 6651(a)(1), and an accuracy-related penalty under section 6662(a).

Intervenor testified that he could not recall receiving the notice of deficiency, but if he did receive it he would have given it to his accountant. Petitioner testified that she was unaware that the notice had been issued. In any event, no petition for redetermination was filed with the Court challenging the notice. The IRS subsequently assessed the amounts determined in the notice.

VIII.  Administrative Proceedings

In early 2011 petitioner learned that the IRS had assessed and expected her to pay additional tax for 2007. She retained legal counsel and promptly filed with the IRS a Form 8857, Request for Innocent Spouse Relief, stating that she was a victim of spousal abuse in 2007, that she was not involved in preparing and did not sign a joint return for that year, and that at the time the return was filed she suffered from mental health problems as a result of intervenor's abuse. Petitioner also stated that she was not involved in handling household finances and that she did not receive any portion of the tax refund for 2007.

Intervenor filed with the IRS a Form 12508, Questionnaire for Non-Requesting Spouse, stating that he and petitioner provided their 2007 tax records to Ms. Kemrick-Cate, who prepared a return that they reviewed and signed.

Intervenor also stated that petitioner did not inform him or the tax return preparer of the withdrawals from her retirement accounts at the time the return was prepared, that the return submitted to the IRS in August 2008 was not the return he signed earlier that year, and that Ms. Kemrick-Cate and petitioner altered the return without his knowledge.

The IRS determined that petitioner was not entitled to relief from joint and several liability under section 6015(b), (c), or (f) for 2007 primarily on the ground that the omitted income giving rise to the tax liability was attributable to her.

## Discussion

Section 6013(a) provides that married taxpayers may elect to file a joint Federal income tax return. As a general rule, a joint return must be signed by both spouses. Sec. 1.6013-1(a)(2), Income Tax Regs. If a joint return is filed, the spouses are jointly and severally liable for the entire tax due. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000).

If certain requirements are met, a spouse may be relieved of joint and several liability under section 6015. No relief is available under section 6015, however, if the taxpayer did not file a joint income tax return. See Raymond v. Commissioner, 119 T.C. 191, 194-197 (2002). Section 6015(e) vests the Court with jurisdiction to review the Secretary's final determination of spousal relief.

Petitioner stated in Form 8857 that she did not participate in the preparation or filing of a joint return for 2007. At trial she testified that she did not authorize or intend to file a joint return for 2007.

To file jointly, married taxpayers must intend to file a joint return. See Lane v. Commissioner, 26 T.C. 405, 408 (1956). The spouses' intent, an issue of fact, see Estate of Campbell v. Commissioner, 56 T.C. 1, 12-13 (1971); Harrington v. Commissioner, T.C. Memo. 2012-285, at *8, must be gleaned from all the facts and circumstances, see Helfrich v. Commissioner, 25 T.C. 404, 407 (1955); McCanless v. Commissioner, T.C. Memo. 1987-573. In evaluating intent to file a joint return, we have considered whether the nonsigning spouse filed a separate return or objected to the joint return and whether prior filing history indicates an intent to file jointly. Estate of Campbell v. Commissioner, 56 T.C. at 12-13; Harrington v. Commissioner, at *8.

On its face, the 2007 return has all the normal earmarks of a joint return-- both spouses' names appear on the return and the return includes items of income and deduction attributable to both of them. However, the return was filed electronically, and it does not bear petitioner's or intervenor's original signature. Ms. Kermick-Cate did not testify at trial, and there is no objective evidence contradicting petitioner's testimony that she did not sign a joint return for 2007 or

otherwise authorize intervenor or Ms. Kermick-Cate to file a joint return. In fact, a document attached to an electronic copy of the return indicates that intervenor alone signed an authorization allowing Ms. Kermick-Cate to file it.

The record provides a dismal picture of an extremely dysfunctional marriage that quickly deteriorated into separation in mid-March 2008 and a final divorce three months later. Petitioner's sister testified credibly and convincingly that by the time petitioner left intervenor she was so emotionally traumatized and distraught that she was contemplating suicide. Her treatment and recovery spanned the better part of the next 12 months. Against this backdrop, it is not difficult to comprehend how petitioner may have decided in early 2008 to abandon the practice of filing a joint return with intervenor. We likewise have no reason to doubt petitioner's statement that she believed (albeit erroneously) that she had sufficient income tax withholding so that there was no pressing need to file a separate return for 2007.

Intervenor's version of the events surrounding the filing of the return suffers from internal inconsistencies and is generally unconvincing. Although intervenor maintains that he and petitioner signed a joint return in Ms. Kermick-Cate's office in late February or early March 2008, he did not produce a copy of that return and he could not explain why it was not filed until August 2008--several months after

it was purportedly prepared and signed and two months after the couple's divorce was final.

There likewise are significant discrepancies in respect of intervenor's statements in Form 12508, submitted to the IRS during the administrative review process, and statements he made at trial. Specifically, intervenor stated in Form 12508 that petitioner did not inform him or Ms. Kermick-Cate that she had received retirement account distributions during 2007, yet the return as filed reported the larger of the two distributions (treating it as a nontaxable rollover) and claimed a prepayment credit in respect of the income tax that was withheld in connection with the distribution. Similarly, intervenor's statements in Form 12508 that the return filed with the IRS in August 2008 was not the return he signed earlier that year and that Ms. Kermick-Cate and petitioner altered the return without his knowledge cannot be reconciled with his trial testimony that he was anticipating a tax refund for 2007 and he visited Ms. Kermick-Cate's office in August 2008 to inquire about it. Despite his professed confusion, intervenor deposited the refund for 2007 in his account and did not question Ms. Kermick-Cate or the IRS about the matter.

Considering all the facts and circumstances, we conclude that petitioner did not intend to file a joint income tax return with intervenor for 2007, and the return

at the center of this controversy is not a valid joint return as contemplated by section 6013(a). It follows that a prerequisite to the application of section 6015 is lacking, and petitioner is ineligible for spousal relief for the taxable year 2007 by way of this proceeding.

To reflect the foregoing,

<u>Decision will be entered denying petitioner's request for relief under section 6015</u>.