T.C. Memo. 2002-142

UNITED STATES TAX COURT

SUSAN L. CASTLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10195-00.                    Filed June 6, 2002.

<u>Gino Pulito</u>, for petitioner.

<u>Katherine Lee Kosar</u> and <u>Dennis G. Driscoll</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  This case arises from a request for equita-
ble relief (relief) under section 6015(f)[1] with respect to peti-
tioner's taxable year 1993.  We must decide whether respondent

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect at all relevant times.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

abused respondent's discretion in denying petitioner relief under that section for that year. We hold that respondent did not abuse respondent's discretion.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner resided in Las Vegas, Nevada, at the time she filed the petition.

Petitioner is a high school graduate and has completed approximately 1-1/2 years of college at Lorain Community College and Columbus State. During the year at issue, petitioner worked full-time for BMW Financial Services and part-time for Dairy Queen. On October 31, 1993, petitioner married Roger L. Castle (Mr. Castle). At the time of the trial in this case, petitioner worked for Continental Airlines as a flight attendant.

On August 17, 1994, petitioner and Mr. Castle signed Form 1040, U.S. Individual Income Tax Return (return), for their taxable year 1993 (1993 joint return).[2] On that date, John Obrig signed the 1993 joint return as the paid preparer of that return. The 1993 joint return showed, inter alia, wages totaling $25,625 received by petitioner from Adia Services, Inc. of Ohio and Banc One Vehicle Finance Corp., income from Mr. Castle's Schedule C computer consulting business of $67,849, Federal income tax (tax)

---

[2]At a time not disclosed by the record, petitioner and Mr. Castle applied for and received an automatic extension of time until Aug. 15, 1994, within which to file the 1993 joint return.

of $26,056, tax withheld from petitioner's wages of $2,344, estimated tax payments of $255, and tax due of $23,457.

On April 17, 1996, petitioner filed with the Internal Revenue Service (IRS) a return for her taxable year 1994 (petitioner's 1994 return).[3] Petitioner did not request or receive an extension of time within which to file petitioner's 1994 return.

On June 24, 1996, almost 2 years after petitioner and Mr. Castle signed the 1993 joint return, they filed it with the IRS. At the time they filed the 1993 joint return, petitioner and Mr. Castle did not pay the tax due shown in that return.

On August 19, 1996, respondent assessed the following amounts with respect to the 1993 joint return: Tax of $26,056,[4] penalties of $8,654.47, and interest of $6,290.61.

At a time not disclosed by the record, but prior to June 2, 1998, petitioner and Mr. Castle separated. Thereafter, on June 2, 1998, petitioner and Mr. Castle signed a property settlement agreement (property settlement agreement). That agreement provided, inter alia:

> 12. The parties hereto do make the following division and settlement of their property:
>
> A. Wife [petitioner] shall receive as her sole and separate property:

---

[3]The record does not disclose whether petitioner filed that return jointly with Mr. Castle.

[4]Respondent credited $2,344 of withholding shown in the 1993 joint return against the tax assessed.

1)  Any personalty in Wife's possession; and
2)  Personal effects of Wife.

B.  Husband [Mr. Castle] shall receive as his sole and separate property:

1)  Any personalty in Husband's possession; and
2)  Personal effects of Husband.

C.  Husband shall assume and pay the following debts, holding Wife harmless therefrom:

1.  All financial and tax obligations as follows:

A)  Internal Revenue Service in the amount of $19,000.00;

B)  Internal Revenue Service in the amount of $4,207 (Dairy Queen);

C)  State Industrial Insurance in the amount of $1,600.00;

D)  Employment taxes in the amount of $406.00 (Nevada);

E)  Sales taxes in the amount of $6,095.00; and

F)  Business license fees in the amount of $276.00.

D.  Wife must file individual tax returns for 1997 and thereafter, and if requested, sign an amended joint tax return with Husband for 1995 and 1996.  Husband shall pay any sums due of the 1995 and 1996 tax returns.

E.  As to the business interest of the parties in the corporation known as LANTech, Inc., the parties agree that Wife shall convey her 50% shareholder interest in the corporation to Husband.

13.  The parties agree that all joint checking accounts, savings accounts, mutual funds, etc., maintained by

the parties are to be closed, with the proceeds therein to be divided equally between the parties.

* * * * * * *

15. All other remaining property, both real and personal, has been divided and distributed by and between the parties pursuant to oral agreement by and between the parties.

On July 23, 1998, petitioner and Mr. Castle divorced. The property settlement agreement was incorporated by reference in, and made part of, the divorce decree.

On May 15, 1999, petitioner submitted to respondent Form 8857, Request for Innocent Spouse Relief, with respect to petitioner's taxable year 1993.

On May 25, 1999, petitioner wrote a letter to respondent in which she stated, inter alia:

> To the best of my recollection a tax return was filed for the year 1993 and all taxes if owed paid.
>
> As stated before I was not married to Roger Castle until October 31, 1994 and thus would not have any tax obligation for the tax year 1993 as his spouse. I believe he has fraudulently claimed himself as married on his tax return of 1993. I have no whereabouts of Mr. Castle. Furthermore he took all records and tax returns after our divorce.
>
> This has been very disheartening for me, as I pay all my taxes if owed. I feel I should not be held liable or obligated to pay someone else's tax responsibility especially if done unlawfully. I also have been threaten by the financial institution where I took out a short term loan that was to be paid back by my tax return. This has effected my good credit rating.
>
> I have filled out and am returning form 8857, Request for Innocent Spouse Relief. [Reproduced literally.]

On May 1, 2000, respondent issued to petitioner a letter in response to petitioner's request for relief from joint and several liability with respect to petitioner's taxable year 1993. That letter stated, inter alia:

> Ms. Susan Castle is not entitled to relief from any tax liability under the provisions of Internal Revenue Code 6015(b), 6015(c) nor 6015(f).
>
> It was determined that Ms. Castle knew or had reason to know of the deficiency, and she failed to prove that a hardship would result if she were to pay the liability.

On June 23, 2000, respondent issued to petitioner a final notice (final notice) of respondent's determination that petitioner is not entitled to relief from joint and several liability under either section 6015(b), (c), or (f) with respect to petitioner's taxable year 1993. With respect to respondent's determination under section 6015(f), the final notice stated: "It is determined that you do not qualify for equitable relief under IRC Section 6015(f). You have not established all the elements necessary to grant you relief."

At the time of the trial in this case, the total assessed but unpaid liability with respect to the 1993 joint return (not including certain accruals) was $31,642.34 (the unpaid 1993 liability).

## OPINION

We review respondent's denial of relief under section

6015(f) for abuse of discretion.[5]  <u>Butler v. Commissioner</u>, 114 T.C. 276, 292 (2000).  Petitioner bears the burden of proving that respondent abused respondent's discretion in denying that relief.  See <u>Jonson v. Commissioner</u>, 118 T.C. 106, 125 (2002).

Section 6015(f) grants respondent discretion to relieve an individual who files a joint return from joint and several liability with respect to that return.  That section provides:

> SEC. 6015(f).  Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
>> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>>
>> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

In the instant case, the parties agree that relief is not available to petitioner under section 6015(b) or (c), thereby satisfying section 6015(f)(2).

As directed by section 6015(f), respondent has prescribed procedures in Rev. Proc. 2000-15, 2000-1 C.B. 447 (Revenue Procedure 2000-15), to be used in determining whether an individual qualifies for relief under that section.  Section 4.01 of

---

[5]The Court's jurisdiction in this case is dependent upon sec. 6015(e)(1).  See <u>Ewing v. Commissioner</u>, 118 T.C. __, __ (2002); <u>Fernandez v. Commissioner</u>, 114 T.C. 324, 330-331 (2000); <u>Butler v. Commissioner</u>, 114 T.C. 276, 289-290 (2000).

Revenue Procedure 2000-15 lists seven conditions (threshold conditions) which must be satisfied before the IRS will consider a request for relief under section 6015(f). In the instant case, respondent concedes that those conditions are satisfied. Where, as here, the requesting spouse satisfies the threshold conditions, section 4.01 of Revenue Procedure 2000-15 provides that a requesting spouse may be relieved under section 6015(f) of all or part of the liability in question if, taking into account all the facts and circumstances, the IRS determines that it would be inequitable to hold the requesting spouse liable for such liability.

Where, as here, the requesting spouse satisfies the threshold conditions, section 4.02(1) of Revenue Procedure 2000-15 sets forth the circumstances under which the IRS ordinarily will grant relief to that spouse under section 6015(f) in a case like the instant case where a liability is reported in a joint return but not paid. As pertinent here, those circumstances, which section 4.02 of Revenue Procedure 2000-15 and we refer to as elements, are:

> (a) At the time relief is requested, the requesting spouse is no longer married to * * * the nonrequesting spouse * * *;

> (b) At the time the return was signed, the requesting spouse had no knowledge or reason to know that the tax would not be paid. The requesting spouse must establish that it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the reported liability. * * *; and

(c) The requesting spouse will suffer economic hardship if relief is not granted. For purposes of this section, the determination of whether a requesting spouse will suffer economic hardship will be made by the Commissioner or the Commissioner's delegate, and will be based on rules similar to those provided in § 301.6343-1(b)(4) of the Regulations on Procedure and Administration. [Rev. Proc. 2000-15, sec. 4.02(1), 2000-1 C.B. at 448]

(We shall hereinafter refer to the elements set forth in section 4.02(1)(a), (b), and (c) of Revenue Procedure 2000-15 as the marital status element, the knowledge or reason to know element, and the economic hardship element, respectively.)

Section 4.02(2) of Revenue Procedure 2000-15 provides that relief granted under section 4.02(1) of that revenue procedure is subject to the following limitations:

(a) If the return is or has been adjusted to reflect an understatement of tax, relief will be available only to the extent of the liability shown on the return prior to any such adjustment; and

(b) Relief will only be available to the extent that the unpaid liability is allocable to the nonrequesting spouse.

Turning to the three elements set forth in section 4.02(1) of Revenue Procedure 2000-15, the presence of which will ordinarily result in a grant of relief under section 6015(f), respondent concedes that the marital status element is present in this case.

With respect to the knowledge or reason to know element, petitioner contends that that element is present in this case because, "At the time of executing the [1993 joint] return,

Petitioner had no reason to believe that any tax obligation resulting from the filing of the return would not be paid by Roger L. Castle."  In support of that contention, petitioner testified that she did not even know that the 1993 joint return showed tax due of $23,457 because she was "hurried" when she signed it.[6]  Petitioner's testimony that she did not know that the 1993 joint return showed tax due of $23,457 is belied by her testimony that she believed the 1993 joint return to be true and correct when she signed it.[7]  We are not required to, and we shall not, rely on petitioner's testimony to establish that she had no knowledge or reason to know that the tax due shown in the 1993 joint return would not be paid.  See Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

---

[6]In this connection, petitioner testified as follows regarding the circumstances surrounding her signing of the 1993 joint return:

> I [petitioner] was at work and Mr. Castle called me and said that I had to meet him at the accountant's immediately, to get there as quickly as possible, that I had to sign this return, that they were closing.  So I ran in the door.  It was a small firm.  They laid the sheet in front of me.  I signed the paper, they stuck it in an envelope, and we left.

[7]Moreover, by signing the 1993 joint return petitioner is charged with constructive knowledge of, inter alia, the tax due shown in that return.  See Park v. Commissioner, 25 F.3d 1289, 1299 (5th Cir. 1994), affg. T.C. Memo. 1993-252; see also Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228.

On the record before us, we find that petitioner has failed to carry her burden of establishing that the knowledge or reason to know element is present in the instant case.

With respect to the economic hardship element,[8] petitioner contends that that element is present in this case because, "Currently, Ms. Castle is not in a position to pay" the unpaid

---

[8]In determining whether a requesting spouse will suffer economic hardship, sec. 4.02(1)(c) of Revenue Procedure 2000-15 requires reliance on rules similar to those provided in sec. 301.6343-1(b)(4), Proced. & Admin. Regs. Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs., generally provides that an individual suffers an economic hardship if the individual is unable to pay his or her reasonable basic living expenses. Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., provides in pertinent part:

> (ii) Information from taxpayer. In determining a reasonable amount for basic living expenses the director will consider any information provided by the taxpayer including--
>
> (A) The taxpayer's age, employment status and history, ability to earn, number of dependents, * * *;
>
> (B) The amount reasonably necessary for food, clothing, housing * * *, medical expenses * * *, transportation, current tax payments * * *;
>
> (C) The cost of living in the geographic area in which the taxpayer resides;
>
> (D) The amount of property exempt from levy which is available to pay the taxpayer's expenses;
>
> (E) Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and
>
> (F) Any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

1993 liability. In support of that contention, petitioner asserts that (1) "she [petitioner] has no assets which can be liquidated to pay this debt" and that (2) at the time of the trial in this case, she expected to be "furloughed from the airline [Continental Airlines]" in about 1 week.

Petitioner did not proffer any evidence to establish that, if she were to pay the unpaid 1993 liability, she would not be able to pay a reasonable amount for her basic living expenses. Indeed, except for petitioner's testimony that she expected to be "furloughed" from her position with Continental Airlines shortly after the trial in this case, petitioner did not proffer any evidence relating to the factors that section 301.6343-1(b)(4), Proced. & Admin. Regs., indicates are to be considered in deter-mining a reasonable amount for basic living expenses.[9] We are unwilling to rely on petitioner's self-serving and conclusory testimony to support her contention that she would suffer eco-nomic hardship if she were not granted relief under section 6015(f). On the record before us, we find that petitioner has failed to carry her burden of establishing that the economic hardship element is present in this case.

---

[9]At trial, petitioner testified that she has a son who was a minor during at least some part of petitioner's marriage to Mr. Castle. Petitioner proffered no evidence to establish at rele-vant times her son's age, whether he was her dependent, and the amount that she spent with respect to him for basic living expenses.

Although petitioner has not shown that she qualifies for relief under section 4.02(1) of Revenue Procedure 2000-15, the IRS may nonetheless grant relief to her under section 4.03 of that revenue procedure. That section provides a partial list of positive and negative factors which respondent is to take into account in considering whether respondent will grant an individual relief under section 6015(f). No single factor is to be determinative in any particular case; all factors are to be considered and weighed appropriately; and the list of factors is not intended to be exhaustive. Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448.

As pertinent here, section 4.03(1) of Revenue Procedure 2000-15 sets forth the following positive factors which weigh in favor of granting relief under section 6015(f):

> (a) <u>Marital status</u>. The requesting spouse is * * * divorced from the nonrequesting spouse.

> (b) <u>Economic hardship</u>. The requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

> (c) <u>Abuse</u>. The requesting spouse was abused by the nonrequesting spouse, but such abuse did not amount to duress.

> (d) <u>No knowledge or reason to know</u>. In the case of a liability that was properly reported but not paid, the requesting spouse did not know and had no reason to know that the liability would not be paid. * * *

> (e) <u>Nonrequesting spouse's legal obligation</u>. The nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding

liability.  This will not be a factor weighing in favor of relief if the requesting spouse knew or had reason to know, at the time the divorce decree or agreement was entered into, that the nonrequesting spouse would not pay the liability.

(f) Attributable to nonrequesting spouse. The liability for which relief is sought is solely attributable to the nonrequesting spouse.

(We shall hereinafter refer to the positive factors set forth in section 4.03(1)(a), (b), (d), (e), and (f) of Revenue Procedure 2000-15 as the marital status positive factor, the economic hardship positive factor, the knowledge or reason to know positive factor, the legal obligation positive factor, and the attribution positive factor, respectively.)

We note initially that the parties do not dispute that the marital status positive factor, the knowledge or reason to know positive factor, and the economic hardship positive factor set forth in section 4.03(1)(a), (d), and (b), respectively, of Revenue Procedure 2000-15 are the same as the marital status element, the knowledge or reason to know element, and the economic hardship element set forth in section 4.02(1)(a), (b), and (c), respectively, of that revenue procedure.

With respect to the marital status positive factor set forth in section 4.03(1)(a) of Revenue Procedure 2000-15, respondent concedes that that factor is present in the instant case.

With respect to the economic hardship positive factor and the knowledge or reason to know positive factor set forth in

section 4.03(1)(b) and (d), respectively, of Revenue Procedure 2000-15, we have found above that petitioner has failed to carry her burden of establishing that the economic hardship element and the knowledge or reason to know element set forth in section 4.02(1)(c) and (b), respectively, of that revenue procedure are present in the instant case.  On the instant record, we further find that petitioner has failed to carry her burden of establishing that those same positive factors are present for purposes of section 4.03(1) of Revenue Procedure 2000-15.

With respect to the positive factor set forth in section 4.03(1)(c) of Revenue Procedure 2000-15 (i.e., the requesting spouse was abused by the nonrequesting spouse), petitioner does not allege, and the record does not establish, any abuse by Mr. Castle.

With respect to the legal obligation positive factor set forth in section 4.03(1)(e) of Revenue Procedure 2000-15, petitioner contends that that factor is present in the instant case because Mr. Castle had a legal obligation to pay the unpaid 1993 liability.  In support of that contention, petitioner asserts: "In accordance with the terms of the Property Settlement Agreement, * * * Roger L. Castle agreed to assume and pay debts holding Petitioner harmless from all financial and tax obligations enumerated therein, which included debt to the Internal Revenue Service."  The property settlement agreement on which

petitioner relies provided that Mr. Castle was to pay, inter alia, two "debts" (debts) owing to the IRS, one identified in that agreement as "Internal Revenue Service in the amount of $19,000.00" and the other identified in that agreement as "Internal Revenue Service in the amount of $4,207 (Dairy Queen)". That agreement does not indicate what type of Federal tax debts those amounts represent or to what taxable year or years those debts relate. On the instant record, we find that petitioner has failed to establish that the two "debts" to the IRS referred to in the property settlement agreement are part of the unpaid 1993 liability. On that record, we find that petitioner has failed to carry her burden of establishing that the legal obligation positive factor set forth in section 4.03(1)(e) of Revenue Procedure 2000-15 is present in the instant case.

With respect to the attribution positive factor set forth in section 4.03(1)(f) of Revenue Procedure 2000-15, respondent concedes on brief that "a significant portion of the unpaid [1993] liability results from Mr. Castle's income" and is attributable to Mr. Castle. Petitioner does not contend, and the record does not establish, that the unpaid 1993 liability is solely attributable to Mr. Castle. On the record before us, we find that petitioner has failed to carry her burden of establishing that the attribution positive factor set forth in section 4.03(1)(f) of Revenue Procedure 2000-15 is present in the instant

case.

Turning to the negative factors weighing against granting relief under section 6015(f) set forth in section 4.03(2) of Revenue Procedure 2000-15, as pertinent here, those factors are:

(a) <u>Attributable to the requesting spouse</u>. The unpaid liability * * * is attributable to the request-ing spouse.

(b) <u>Knowledge, or reason to know</u>. A requesting spouse knew or had reason to know * * * that the re-ported liability would be unpaid at the time the return was signed.  This is an extremely strong factor weigh-ing against relief.  Nonetheless, when the factors in favor of equitable relief are unusually strong, it may be appropriate to grant relief under § 6015(f) in limited situations where a requesting spouse knew or had reason to know that the liability would not be paid * * *.

(c) <u>Significant benefit</u>. The requesting spouse has significantly benefitted (beyond normal support) from the unpaid liability * * *.

(d) <u>Lack of economic hardship</u>. The requesting spouse will not experience economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from liability is not granted.

(e) <u>Noncompliance with federal income tax laws</u>. The requesting spouse has not made a good faith effort to comply with federal income tax laws in the tax years following the tax year or years to which the request for relief relates.

(f) <u>Requesting spouse's legal obligation</u>. The requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the liability.

(We shall hereinafter refer to the negative factors set forth in section 4.03(2)(a), (b), (d), and (f) of Revenue Procedure 2000-15 as the attribution negative factor, the knowledge or reason to

know negative factor, the economic hardship negative factor, and the legal obligation negative factor, respectively.)

We note initially that the parties do not dispute that the knowledge or reason to know negative factor, the economic hardship negative factor, and the legal obligation negative factor set forth in section 4.03(2)(b), (d), and (f), respectively, of Revenue Procedure 2000-15 are the opposites of the knowledge or reason to know positive factor, the economic hardship positive factor, and the legal obligation positive factor set forth in section 4.03(1)(d), (b), and (e), respectively, of that revenue procedure.  We also note that the parties do not dispute that the attribution negative factor set forth in section 4.03(2)(a) of Revenue Procedure 2000-15 is essentially the opposite of the attribution positive factor set forth in section 4.03(1)(f) of that revenue procedure.[10]  We have found above that petitioner has failed to carry her burden of establishing that the knowledge or reason to know positive factor and the economic hardship positive factor set forth in section 4.03(1)(d) and (b), respectively, of Revenue Procedure 2000-15 are present in the instant

---

[10]Although we do not believe that those two factors are exactly opposite because the attribution negative factor does not contain the word "solely" that appears in the attribution positive factor, we conclude that respondent's use of the word "solely" in describing the attribution positive factor but not in describing the attribution negative factor does not affect our findings and conclusions with respect to those factors in the instant case.

case.  On the instant record, we further find that petitioner has failed to carry her burden of establishing that the knowledge or reason to know negative factor and the economic hardship negative factor set forth in section 4.03(2)(b) and (d), respectively, of that revenue procedure are not present in the instant case.

With respect to the attribution negative factor set forth in section 4.03(2)(a) of Revenue Procedure 2000-15, we have found above that petitioner has failed to carry her burden of establishing that the unpaid 1993 liability is solely attributable to Mr. Castle.  However, respondent concedes that a significant portion of that liability is attributable to Mr. Castle.  On the record before us, we find that a significant portion of the unpaid 1993 liability is not attributable to petitioner.

With respect to the legal obligation negative factor set forth in section 4.03(2)(f) of Revenue Procedure 2000-15, we have found above that petitioner has failed to carry her burden of establishing that Mr. Castle had a legal obligation pursuant to the property settlement agreement to pay the unpaid 1993 liability.  However, the property settlement agreement does not establish that petitioner had a legal obligation to pay that liability.  On the record before us, we find that petitioner did not have a legal obligation under the property settlement agreement to pay the unpaid 1993 liability.

With respect to the negative factor set forth in section

4.03(2)(c) of Revenue Procedure 2000-15 (i.e., the requesting spouse has significantly benefited from the unpaid liability), petitioner contends that that factor is not present in this case because she "received no significant assets or support from Mr. Castle." In support of that contention, petitioner asserts that when she divorced Mr. Castle "She left with her and her son's personal belongings and clothing." The terms of the property settlement agreement do not contradict that assertion. However, petitioner and Mr. Castle signed that agreement approximately 5 years after the taxable year at issue and 2 years after they filed the 1993 joint return. We conclude that petitioner's assertion that when she divorced Mr. Castle she took from her marriage to him only "her and her son's personal belongings and clothing" is not determinative of whether she significantly benefited from the unpaid 1993 liability. Petitioner did not proffer any other evidence to show that she did not significantly benefit from the unpaid 1993 liability. On the record before us, we find that petitioner has failed to carry her burden of establishing that the negative factor set forth in section 4.03(2)(c) of Revenue Procedure 2000-15 is not present in the instant case.

With respect to the negative factor set forth in section 4.03(2)(e) of Revenue Procedure 2000-15 (i.e., the requesting spouse has not made a good faith effort to comply with the tax laws in the taxable years following the year to which the request

for relief relates), respondent points to the fact that petitioner did not timely file petitioner's 1994 return as an indication that she did not make a good faith effort to comply with the tax laws in at least 1 taxable year following the taxable year to which petitioner's request for relief related.  Park v. Commissioner, 25 F.3d 1289, 1299 (5th Cir. 1994), affg. T.C. Memo. 1993-252.  Petitioner gave no explanation as to why she filed petitioner's 1994 return more than 1 year past the due date for filing that return.  On the record before us, we find that petitioner has failed to carry her burden of establishing that the negative factor set forth in section 4.03(2)(e) of Revenue Procedure 2000-15 is not present in the instant case.

On the record before us, we find that petitioner has failed to carry her burden of establishing any other factors that weigh in favor of granting relief under section 6015(f) and that are not set forth in sections 4.02(1) and 4.03(1) of Revenue Procedure 2000-15.

Based upon our examination of the entire record before us, we find that petitioner has failed to carry her burden of showing that respondent abused respondent's discretion in denying her relief under section 6015(f) with respect to the unpaid 1993 liability.

We have considered all of petitioner's arguments and contentions which are not discussed herein, and we find them to be

without merit and/or irrelevant.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.