T.C. Summary Opinion 2004-176


UNITED STATES TAX COURT


VICKI JO JAMES, Petitioner
v. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9856-03S.          Filed December 28, 2004.


Steve Allen Claus, for petitioner.

Abbey B. Garber and Adam L. Flick (specially recognized),
for respondent.


CARLUZZO, Special Trial Judge:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.[1]  The decision to be

_____

[1] Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect at the time the
petition was filed.

entered is not reviewable by any other court, and this opinion should not be cited as authority.

In a final notice of determination, dated April 9, 2003, respondent denied petitioner's claim for section 6015(f) relief from her unpaid 1995, 1996, and 1997 Federal income tax liabilities. In a timely petition, filed June 24, 2003, petitioner requests this Court to review respondent's determination. Our jurisdiction to do so is established by section 6015(e), see Ewing v. Commissioner, 118 T.C. 494, 496-497 (2002), and we review respondent's determination for abuse of discretion. Butler v. Commissioner, 114 T.C. 276, 292-293 (2000).

The issue for decision is whether respondent's failure to relieve petitioner from unpaid Federal income tax liabilities reported on joint Federal income tax returns for the years 1995, 1996, or 1997 is, for any of those years, an abuse of discretion.

Background

Some of the facts have been stipulated and are so found. At the time the petition was filed in this case, petitioner resided in Plainview, Texas.

Petitioner and Tommy J. James (petitioner's former spouse) had been married for 19 years prior to their divorce in January 1998. They have two sons, Russell Blake James, born December 2, 1981, and Tyler Martin James, born June 25, 1985 (the children).

Petitioner's former spouse was a farmer during most of the time he and petitioner were married. At trial, when asked by her attorney how she was employed during her marriage, petitioner described herself as a "stay-at-home mom." Although petitioner did not participate in the farming operations, from time to time during their marriage she and her former spouse discussed the family's financial situation.

For years prior to 1995, petitioner and her former spouse filed joint Federal income tax returns and fully paid the Federal income tax liabilities reported on those returns. Due to financial difficulties apparently caused by the vagaries of crop production, things changed in 1995.

For that year, as well as the next, the amount of tax shown on the joint return of petitioner and her spouse was not fully paid with the filing of the return. Of the $25,019 liability[2] reported on their 1995 joint return, only $8,500 was paid with the return. Apparently, the balance was paid through a series of installment payments made during 1997 and 1998. On their 1996 joint return, they reported a tax liability of $26,527 but paid only $12,919 with that return. During 1997, a $5,000 payment was made towards the outstanding 1996 tax liability. It appears that

---

[2] This amount does not include the "estimated tax penalty" reported on the return.

as of the date of trial, no additional payments on petitioner's outstanding 1996 tax liability had been made.

For 1997 petitioner and her former spouse initially filed timely separate individual returns. The $17,163 income tax liability reported on petitioner's 1997 return remains, for the most part, unpaid and results almost entirely from reporting her community property share of her former spouse's farming income. The $29,076 income tax liability reported on the separate 1997 return of petitioner's former spouse was paid in full with the return.

Not surprisingly, it appears that petitioner's domestic and financial situations deteriorated simultaneously. As of the close of 1997, divorce proceedings had been initiated. As noted above, petitioner and her former spouse were divorced in January 1998, prior to the date that each had filed a separate 1997 return. The divorce decree (including other documents incorporated by reference) required petitioner and her former spouse to file separate 1997 Federal income tax returns and presumably that is why they did so. Other relevant provisions of the divorce decree: (1) Obligate petitioner's former spouse to pay to petitioner $1,500 per month in child support; (2) award the marital residence to petitioner; (3) assign the liability for the mortgage and real estate taxes on the marital residence to petitioner's former spouse; (4) provide that petitioner's

former spouse will, under conditions described, pay a portion of petitioner's 1997 Federal income tax liability; and (5) in order to equalize the division of marital property, require petitioner's former spouse to sign a $107,782, interest-bearing, secured "vendor's lien note" (the note), payable to petitioner in monthly installments of $1,500, plus annual "balloon" payments of $12,000.

During 1998, which petitioner's former spouse described as a "good crop year", he made payments to, or on behalf of, petitioner as required by the divorce decree. Starting in 1999 and continuing into 2000, petitioner's former spouse failed to make all of the required payments on the note, failed to keep his child support obligations current, and failed to make all of the mortgage payments on the marital residence. As of the close of 1999, petitioner's former spouse was no longer engaged in farming. In September 2000 he initiated a bankruptcy proceeding. It appears that after the bankruptcy proceeding was commenced, petitioner received payments of $25,000 and $30,000 from her former spouse. The purpose(s) or specific date(s) of the payments cannot be determined from the record.

Following her divorce, petitioner sold the marital residence, and, in sequence, purchased, resided in, and sold two other residences. She also graduated from a private college and began employment as a nurse. The children lived with petitioner

following her divorce.  When each of her sons reached the requisite age for a driver's license, she purchased a car for him.  The specific dates for the above occurrences cannot be determined, and it is not clear whether the events occurred before or after petitioner made her request for section 6015 relief.

Petitioner's request for section 6015 relief is dated July 12, 2000.  It was received by respondent on July 17, 2000. In her request, petitioner seeks only "equitable relief" from income tax liabilities for the years 1995, 1996, and 1997. Between the dates that petitioner's request for section 6015 relief was submitted and October 2000, petitioner and her former spouse filed a joint 1997 Federal income tax return.  The portion of the unpaid income tax reported on the joint return closely approximates petitioner's then-outstanding income tax liability resulting from her 1997 separate return.[3]  In a final notice, dated April 9, 2003, respondent denied petitioner's request for relief for all 3 years.  Respondent's determination was reconsidered and upheld by respondent's Appeals Office on December 18, 2003, after the petition in this case was filed.

_____

[3] The parties have ignored the fact that at the time her request for sec. 6015 relief was made, her 1997 income tax liability did not result from a joint Federal income tax return, see Raymond v. Commissioner, 119 T.C. 191, 195-197 (2002), and we do likewise.

Discussion

In general, section 6013(a) allows spouses to elect to file a joint Federal income tax return even though one has neither income nor deductions. Subject to various conditions and limitations, the election is available even after an individual return has been filed by one, or both of the spouses. Sec. 6013(b). If for any year spouses elect to file a joint return, then each spouse is charged with the knowledge of the information reported on the return, and each spouse is jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. at 282.

Subject to various conditions and in a variety of ways, an individual who has made a joint return may elect to seek relief from the joint and several liability arising from that joint return. Sec. 6015. In this case, petitioner seeks relief from liabilities reported on the 1995, 1996, and 1997 joint returns that she filed with her former spouse. Consequently, she is entitled to relief only as provided in section 6015(f), which allows relief from joint and several liability if "it is inequitable to hold the individual liable for any unpaid tax," and the individual is not entitled to relief under other provisions of section 6015. Sec. 6015(f)(1); Washington v. Commissioner, 120 T.C. 137, 146-147 (2003).

We review the Commissioner's determination to deny section 6015(f) equitable relief using an abuse of discretion standard and defer to the Commissioner's determination unless it is arbitrary, capricious, or without sound basis in fact. Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003). For each year here relevant, petitioner bears the burden of proving that respondent's denial of her request for section 6015(f) relief is an abuse of discretion. Washington v. Commissioner, supra at 146; Jonson v. Commissioner, supra at 125.

As required by section 6015(f), the Commissioner has prescribed procedures and factors Internal Revenue Service employees use to determine whether a spouse qualifies for relief under that subsection. At the time that petitioner requested relief under section 6015(f), those procedures were set forth in Rev. Proc. 2000-15, 2000-1 C.B. 447. (Subsequent modification of these procedures by Rev. Proc. 2003-61, 2003-32 I.R.B. 296, does not affect the resolution of this case.)

Certain threshold conditions must be satisfied before the Commissioner will consider a request for relief under section 6015(f). See Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448. Respondent agrees that petitioner satisfies these threshold conditions for each year here under consideration, and we focus our attention on other parts of the controlling revenue procedure.

Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, describes the circumstances under which the Commissioner will "ordinarily" grant equitable relief in cases where a liability reported on a joint return is unpaid. These elements are:

> (a) At the time relief is requested, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse * * *;

> (b) At the time the return was signed, the requesting spouse had no knowledge or reason to know that the tax would not be paid. The requesting spouse must establish that it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the reported liability. * * *; and

> (c) The requesting spouse will suffer economic hardship if relief is not granted. * * *

Rev. Proc. 2000-15, sec. 4.02(1), 2000-1 C.B. at 448.

Respondent acknowledges that petitioner satisfies the first requirement, but argues that petitioner does not qualify for relief under sec. 4.02 of the revenue procedure because she: (1) Knew or had reason to know that the liabilities reported on the joint returns for 1995 through 1997 would not be paid at the times that she signed those returns; and (2) has not demonstrated that she would suffer economic hardship if relief is not granted. We agree with respondent on both points.

Although petitioner did not participate in the family farming operation, she was aware of the family's financial situation. She was aware that her former spouse was having trouble satisfying his then-current financial obligations when

she signed the 1995 and 1996 returns, and she certainly was aware of her former spouse's dire financial situation when she signed the 1997 return. The timing of the events strongly suggests that the 1997 return was filed for the sole purpose of allowing her to seek section 6015(f) relief from a Federal income tax liability originally reported on a separate return. As to her "economic hardship," we take into account, as did respondent, that she was awarded substantial property in the divorce proceeding, and it was her choice to expend some of the moneys received on expenses other than her outstanding Federal income tax liabilities. To the extent that she experienced or is experiencing economic hardship, that hardship is brought about more by her own decisions than respondent's refusal to grant section 6015(f) relief.

As in this case, if the requesting spouse satisfies the threshold conditions of Rev. Proc. 2000-15, sec. 4.01, but does not qualify for relief under Rev. Proc. 2000-15, sec. 4.02, the Commissioner looks to Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, to determine whether the taxpayer should be granted equitable relief.

Section 4.03 of the revenue procedure provides a partial list of positive and negative factors that the Commissioner is to take into account when considering whether to grant an individual full or partial equitable relief under section 6015(f). As that

section makes clear, no single factor is to be determinative in any particular case--all factors are to be considered and weighed appropriately, and the list of factors is not intended to be exhaustive. We see little point in listing and discussing each factor set forth in section 4.03 of the revenue procedure. Respondent has adequately done so in his supporting statement denying petitioner's request for section 6015(f) relief.

Suffice it to say that respondent has considered each and every one of the factors listed in section 4.03 of the revenue procedure. Although we might not entirely agree with respondent's conclusion with respect to each, we cannot say that respondent's determination to deny petitioner's request for section 6015(f) relief for any year in issue is an abuse of discretion.

Reviewed and adopted as the report of the Small Tax Division.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.