T.C. Summary Opinion 2005-145


UNITED STATES TAX COURT


ANN MARIE BRIGHT, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3839-04S.          Filed October 4, 2005.


Ann Marie Bright, pro se.

Robert V. Boeshaar, for respondent.


CARLUZZO, Special Trial Judge: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1] The decision to be

―――――――――――――――

[1] This opinion supplements a bench opinion rendered on Oct. 22, 2004. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code as amended. Rule references are to the Tax Court Rules of Practice and Procedure.

entered is not reviewable by any other court, and this opinion should not be cited as authority.

In a final notice of determination, dated December 18, 2003, respondent denied petitioner's claim for section 6015(f) relief from her unpaid 1995 Federal income tax liability. In a timely petition, filed March 3, 2004, petitioner requests this Court to review respondent's determination. Our jurisdiction to do so is established by section 6015(e), see Ewing v. Commissioner, 118 T.C. 494, 496-497 (2002), and we review respondent's determination for abuse of discretion, see Butler v. Commissioner, 114 T.C. 276, 292-293 (2000).

The issue for decision is whether respondent's failure to relieve petitioner from an unpaid Federal income tax liability reported on a 1995 joint Federal income tax return is an abuse of discretion.

Background

Some of the facts have been stipulated and are so found. At the time the petition was filed in this case, petitioner resided in Camano Island, Washington.

Petitioner, a high school graduate with 2 years of college education, married Jessie Bright (petitioner's former spouse) in 1978. They have one child, a son, born in 1981.

Petitioner was employed as an office manager during 1995, and appropriate amounts of Federal income tax were withheld from her wages from that employment. Her former spouse was a self-employed construction contractor during 1995. He made no estimated quarterly tax payments with respect to his self-employment income earned that year.

Petitioner and her former spouse maintained a joint checking account throughout their marriage. Petitioner's former spouse controlled their personal finances and directed the payment of all of the household expenses, which from time to time included payments to respondent in accordance with installment agreements in effect for different years. Petitioner was given a fixed amount each month by her former spouse with which to purchase groceries for the family. Petitioner did not have access to the household checking account without the knowledge of her former spouse. In addition, petitioner's former spouse maintained a separate checking account for his construction business. Petitioner did not have access to the business checking account.

Petitioner and her former spouse filed joint Federal income tax returns during their marriage. Petitioner's former spouse was responsible for the preparation and filing of the joint returns. Their joint returns typically were untimely, and the tax reported on those returns typically was not fully paid with the return. Before 1995, petitioner's former spouse negotiated

installment agreements for the payment of amounts reported on delinquent Federal income tax returns, and the tax liabilities for years prior to 1995 ultimately were satisfied through these installment agreements or otherwise.

Petitioner's 1995 joint Federal income tax return was filed on March 21, 1997. Taking into account the Federal income tax liability reported on the return and prepayment credits consisting entirely of petitioner's income tax withholdings, the return shows a balance due of $3,751 that was not paid with the return.[2] At the time she signed the 1995 return, petitioner knew that the tax liability reported on the return had not fully been paid.

During the marriage, petitioner's former spouse began to abuse alcohol and drugs. During the final years of the marriage, petitioner's former spouse became abusive towards her, and at times petitioner feared for her safety. In June 1997, the years of substance abuse culminated in a violent episode that prompted petitioner to call the police in order to have her former spouse removed from the marital residence. The resultant police report noted petitioner's former spouse's substance abuse and

---

[2] The unpaid balance consists of the sec. 1401 self-employment tax and sec. 1 income tax on the self-employment income of petitioner's former spouse.

petitioner's concern that her former spouse might harm her or her son.

The potential for violence and her concerns for the safety of herself and her son led to petitioner's decision to move, with her son, from the marital residence. When she advised her former spouse of her intention to do so, she and her son were forced from the marital residence without notice and with only a minimal number of personal possessions. At that time, petitioner and her son moved to Washington State to live with petitioner's daughter.

Petitioner and her former spouse were divorced in August 1998. The divorce decree ordered, in pertinent part, that petitioner's former spouse pay child support and the then-outstanding 1995 Federal income tax liability.[3]

Since the divorce, petitioner's former spouse has been more than $4,900 in arrears on his child support obligation. In addition, petitioner's former spouse did not pay the outstanding 1995 tax liability, despite the fact that he provided petitioner with a copy of an offer in compromise that he claimed he had made with respect to that liability.

---

[3] The copy of the divorce decree that petitioner initially provided to respondent at the time of her request for innocent spouse relief did not contain the provision which obligated petitioner's former spouse to pay the outstanding 1995 Federal tax liability. However, a copy of the divorce decree which included this provision was subsequently provided to respondent.

Following her divorce, petitioner's Federal income tax returns were timely filed. With the exception of 2001, all of the taxes shown on those returns were paid timely.[4]

By letter dated April 1, 2002, respondent notified petitioner that the 1995 tax liability remained unpaid.

On April 6, 2002, petitioner submitted to respondent a Form 8857, Request for Innocent Spouse Relief, in which she requested section 6015 relief from the unpaid portion of her 1995 Federal income tax liability. According to the form, petitioner seeks only "equitable relief" from that liability. On a questionnaire submitted after her request, petitioner listed her total monthly income and living expenses as $3,000 and $2,968, respectively.[5]

On November 15, 2002, respondent sent a preliminary letter to petitioner notifying her that she was not entitled to relief under section 6015. In December 2002, petitioner submitted to respondent a Form 12509, Statement of Disagreement. On

---

[4] Petitioner testified, and the record does not reflect otherwise, that she entered into an installment agreement with the IRS with respect to her unpaid taxes for the 2001 tax year. As a result of this installment agreement, petitioner's 2001 tax liability was paid in full in March 2003.

[5] In a subsequent submission to respondent, petitioner listed her total monthly income and living expenses as $3,181 and $3,024, respectively. Petitioner also provided copies of several medical bills for herself and her son which totaled $1,051. On the basis of petitioner's 2002 tax return and the limited information she provided, respondent determined that petitioner's total monthly income and allowable living expenses were $3,734 and $3,436, respectively.

December 18, 2003, respondent issued a notice of determination advising petitioner that she was not entitled to relief under section 6015.

Discussion

In general, section 6013(a) allows a husband and wife to elect to file a joint Federal income tax return. If for any year spouses elect to file a joint return, then each spouse is charged with the knowledge of the information reported on the return, and each spouse is jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. at 282.

Subject to various conditions and in a variety of ways, an individual who has made a joint return may elect to seek relief from the joint and several liability arising from that joint return. Sec. 6015. Petitioner seeks relief from liabilities reported on the 1995 joint return that she filed with her former spouse. Consequently, she is entitled to relief only as provided in section 6015(f), see Washington v. Commissioner, 120 T.C. 137, 146-147 (2003), which allows relief from joint and several liability if the individual is not entitled to relief under other provisions of section 6015 and "it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)", sec. 6015(f)(1).

We review respondent's denial of equitable relief after a trial de novo and under an abuse of discretion standard. Ewing v. Commissioner, 122 T.C. at 35-44; Butler v. Commissioner, supra. Petitioner bears the burden of proving that respondent's denial of her request for section 6015(f) relief is an abuse of discretion. See Rule 142(a); Washington v. Commissioner, supra at 146; Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003). Petitioner must demonstrate that respondent exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. See Jonson v. Commissioner, supra; Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002). The Court's review is not limited to respondent's administrative record. Ewing v. Commissioner, supra at 44.

As required by section 6015(f), the Commissioner has prescribed procedures and factors IRS employees use to determine whether a spouse qualifies for relief under that section. At the time that petitioner requested relief under section 6015(f), those procedures were set forth in Rev. Proc. 2000-15, 2000-1 C.B. 447. (Subsequent modification of these procedures by Rev. Proc. 2003-61, 2003-2 C.B. 296, does not affect the resolution of this case.)

Certain threshold conditions must be satisfied before the Commissioner will consider a request for relief under section

6015(f).  See Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448.
Respondent agrees that petitioner satisfies these threshold
conditions for the year under consideration, and we focus our
attention on other parts of the controlling revenue procedure.

Rev. Proc. 2000-15, sec. 4.02, 2000-1 C.B. at 448, describes
the circumstances under which the Commissioner will "ordinarily"
grant equitable relief in cases where a liability reported on a
joint return is unpaid.  Rev. Proc. 2000-15, sec. 4.02(1)
provides that equitable relief will ordinarily be granted if all
of the following elements are satisfied:

> (a) At the time relief is requested, the
> requesting spouse is no longer married to, or is legally
> separated from, the nonrequesting spouse * * *;
>
> (b) At the time the return was signed, the
> requesting spouse had no knowledge or reason to know
> that the tax would not be paid. The requesting spouse
> must establish that it was reasonable for the requesting
> spouse to believe that the nonrequesting spouse would
> pay the reported liability. * * *; and
>
> (c) The requesting spouse will suffer economic
> hardship if relief is not granted.  For purposes of this
> section, the determination of whether a requesting
> spouse will suffer economic hardship will be made by the
> Commissioner or the Commissioner's delegate, and will be
> based on rules similar to those provided in § 301.6343-
> 1(b)(4) of the Regulations on Procedure and
> Administration.

Respondent concedes that petitioner satisfies the first
requirement but argues that petitioner does not qualify for
relief under Rev. Proc. 2000-15, sec. 4.02 because she:

(1) Knew or had reason to know at the time that she signed the return that the liability reported on the joint return for 1995 would not be paid; and (2) has not demonstrated that she will suffer economic hardship if relief is not granted.

The relevant knowledge in the case of a reported but unpaid liability is whether when the return was signed, the taxpayer knew or had reason to know "that the tax would not be paid." Id. sec. 4.02(1)(b). Accordingly, we must consider whether, "taking into account all the facts and circumstances", petitioner knew or had reason to know that her former spouse would not pay the taxes on his self-employment income shown as due on the tax return for the taxable year in issue. See sec. 6015(f)(1).

Petitioner contends that she had no knowledge that the unpaid 1995 joint tax liability would not be paid by her former spouse. Petitioner did know that there was income tax due for the taxable year in issue when she signed the tax return. However, petitioner testified that her former spouse had a pattern of "filing late, paying late, but having payment agreements with the IRS." Petitioner further testified that when she signed the 1995 joint return "there was no reason for me to think otherwise at that time that the [1995] taxes would not be paid in a similar fashion, that we would get an installment agreement and that that would be how those taxes would be paid." Having observed petitioner's demeanor at trial, we find her

testimony to be credible. In addition, petitioner's testimony is corroborated by the fact that her former spouse did pay the tax balances due as reported on the couple's jointly filed income tax returns. Accordingly, we conclude that petitioner had no knowledge that her former spouse would not pay, albeit at some later date, the tax due with their 1995 return.

Petitioner further claims that she had no reason to know that her former spouse would not pay the 1995 tax liability. She points out that her former spouse was responsible for paying the household expenses, including installment payments to the IRS. Petitioner's access to the joint checking account was through her former spouse. Additionally, petitioner had no access to her former spouse's separate business checking account. It was petitioner's former spouse's practice to file their joint tax return late, to make no payment with the return, and to enter into an installment agreement with the IRS. Although petitioner signed the 1995 tax return in March 1997 and was aware of the tax due, petitioner had no reason to believe that her former spouse would not pay the tax liability. In fact, petitioner's former spouse handled the tax matters with the IRS and had paid any taxes due for years prior to 1995. Contrary to respondent's position, we conclude that petitioner did not have reason to know that the income tax for the taxable year in issue would not be paid by her former spouse.

Economic hardship for purposes of the revenue procedure is determined by using rules similar to those under section 301.6343-1(b)(4), Proced. & Admin. Regs., and generally involves an inability to pay reasonable basic living expenses. Rev. Proc. 2000-15, sec. 4.02. This regulation provides that the Commissioner will consider any information offered by the taxpayer that is relevant to the determination, including, but not limited to, the taxpayer's age, ability to earn, and responsibility for dependents and the amount reasonably necessary for basic living expenses. See sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

Petitioner provided insufficient evidence to support a finding of economic hardship. Petitioner provided no evidence as to her basic monthly living expenses other than two lists of her monthly expenses which totaled $2,968 and $3,024, respectively, and copies of several medical bills which totaled $1,051. Assuming, without finding, that all of the expenses petitioner claimed (e.g., expenses relating to her adult son) qualify as basic living expenses within the meaning of section 301.6343-1(b)(4), Proced. & Admin. Regs., petitioner provided no evidence as to the amount of her claimed monthly living expenses. Additionally, at the time of the trial in this case, petitioner was earning approximately $42,000 a year. Other than the three medical bills (two of which were for petitioner's son),

petitioner introduced no evidence of her basic living expenses or other current debts that would show she could not pay her current reasonable basic living expenses. Accordingly, petitioner has failed to establish that she will suffer economic hardship if equitable relief is not granted. The Court concludes that petitioner has not satisfied this element. Therefore, the Court concludes that petitioner fails to qualify for relief under Rev. Proc. 2000-15, sec. 4.02.

If the requesting spouse satisfies the threshold conditions of Rev. Proc. 2000-15, sec. 4.01, but does not qualify for relief under Rev. Proc. 2000-15, sec. 4.02, the Commissioner looks to Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, to determine whether the taxpayer should be granted equitable relief.

Rev. Proc. 2000-15, sec. 4.03(1), lists the following six factors weighing in favor of granting relief for an unpaid liability: (1) The requesting spouse is separated or divorced from the nonrequesting spouse; (2) the requesting spouse will suffer economic hardship if relief is denied; (3) the requesting spouse was abused by the nonrequesting spouse; (4) the requesting spouse did not know or have reason to know that the reported liability would not be paid; (5) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability; and (6) the unpaid liability is attributable to the nonrequesting spouse. Rev. Proc. 2000-15,

sec. 4.03(2), 2000-1 C.B. at 449, lists the following six factors weighing against granting relief for an unpaid liability: (1) The unpaid liability is attributable to the requesting spouse; (2) the requesting spouse knew or had reason to know at the time the return was signed that the reported liability would be unpaid; (3) the requesting spouse significantly benefited (beyond normal support) from the unpaid liability; (4) the requesting spouse will not suffer economic hardship if relief is denied; (5) the requesting spouse has not made a good faith effort to comply with Federal income tax laws in the tax years following the tax year to which the request for relief relates; and (6) the requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability. This list is not exhaustive, no single factor is determinative, and all factors should be considered and weighed appropriately. Rev. Proc. 2000-15, sec. 4.03.

As we view the matter, the factors in favor of granting petitioner relief outweigh the factors against granting petitioner relief. Petitioner is divorced from her former spouse. Respondent concedes that petitioner was abused by her former spouse during the marriage. As discussed above, petitioner did not know or have reason to know that the reported 1995 tax liability would not be paid by her former spouse.

Additionally, petitioner's former spouse has a legal obligation pursuant to their divorce decree to pay the unpaid 1995 tax liability. The record does not reflect that petitioner benefitted beyond normal support from the unpaid tax liability. Petitioner has also made a good faith effort to comply with Federal tax laws in the tax years following the tax year to which the request for relief relates. Finally, the unpaid 1995 tax liability is attributable to the self-employment income of petitioner's former spouse. The only factor not weighing in favor of granting petitioner equitable relief is that, as discussed above, she will not suffer economic hardship if relief is denied.

Petitioner has presented a strong case for relief from joint liability under the factors promulgated by the Commissioner in Rev. Proc. 2000-15, sec. 4.03. All of the factors except one, economic hardship, weigh in favor of granting relief to petitioner. While the economic hardship factor weighs against petitioner, it does not outweigh the positive factors. Furthermore, denying relief entirely on the basis of that one factor would elevate that factor to the status of determinative. We are unwilling to proceed by doing so. Accordingly, we hold that petitioner is entitled to relief under section 6015(f) and that respondent's failure to grant that relief was an abuse of discretion.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.