T.C. Memo. 2006-250

UNITED STATES TAX COURT

WILLIAM R. TINNERMAN, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 18725-04, 4975-05.[1]    Filed November 14, 2006.

William R. Tinnerman, pro se.

Lauren B. Epstein, for respondent.

MEMORANDUM OPINION

WELLS, Judge:  Respondent determined the following
deficiencies in income tax, additions to tax, and penalties for
petitioner's taxable years 1999, 2000, 2001, and 2002:

_____

[1]These cases were consolidated by order of the Court and are
hereafter referred to as the instant case.

| Year | Deficiency | 6651(a)(1) | 6651(a)(2) | 6651(f) | 6654(a) |
|------|-----------|-----------|-----------|---------|---------|
| 1999 | $75,888 | – | $18,972 | $55,018.80 | $3,672.67 |
| 2000 | 69,302 | – | [2] | 51,976.50 | 3,701.75 |
| 2001 | 52,823 | – | [3] | 39,617.25 | 2,111 |
| 2002 | 44,220 | $11,055 | – | – | 1,477.71 |

The issues we must decide are: (1) Whether the record in the instant case should be reopened to receive new evidence; (2) whether petitioner has a zero basis in his S corporation stock; (3) whether petitioner is liable for deficiencies in income tax for taxable years 1999 through 2002; (4) whether petitioner is liable for the fraud penalty pursuant to section 6651(f)[4] for taxable years 1999, 2000, and 2001; (5) whether petitioner is liable for an addition to tax pursuant to section 6651(a)(1) for failure to file his 2002 tax return; (6) whether petitioner is liable for an addition to tax pursuant to section 6654(a) for failure to make estimated payments for tax years 1999 through 2002; and (7) whether petitioner is liable for a penalty pursuant to section 6673.

---

[2]To be calculated.

[3]To be calculated.

[4]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue.

## Background

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of fact are incorporated herein by reference and are found as facts in the instant case. Petitioner resided in St. Augustine, Florida, at the time the petitions were filed in the instant cases.

Petitioner graduated from the University of Colorado in 1972 with a business degree, majoring in finance and minoring in economics. Petitioner is a licensed commercial real estate broker and has commercial real estate management experience.

Petitioner failed to file federal income tax returns, make estimated payments, or pay the tax due for his 1999 through 2002 taxable years. During that time, petitioner was the sole shareholder and president of St. Augustine Self Storage, Inc. (company), an S corporation incorporated in 1986. When incorporated, the company had three shareholders, including petitioner.

The company owns property located at 5 Willard Drive, St. Augustine, Florida (property). On August 6, 1986, the company executed a note in the amount of $1,225,000 (note) and, to secure the note, a mortgage encumbering the property. Petitioner did not provide any evidence that he is or has ever been personally liable to pay the note.

Petitioner has been the sole shareholder of the company since 1991, and president and treasurer since approximately 1988. Petitioner had significant pass-through income from the company and received distributions from the company for all taxable years in issue in the instant case.

Petitioner's certified public accountant, Jon Mazer (Mr. Mazer), has prepared all the corporate income tax returns for the company, including those for 1999 through 2002. Prior to 1999, Mr. Mazer also prepared individual income tax returns for petitioner. Petitioner reviewed, signed, and filed all the Forms 1120S, U.S. Income Tax Return for a Subchapter S Corporation, for the company for all taxable years in issue.

When petitioner filed the Forms 1120S for the company for taxable years 1999 through 2002 he was aware of the net income reported on those returns. Petitioner understood the tax effects of having an S corporation and specifically was aware during the taxable years in issue that the net profits from an S corporation are passed through and taxable to its shareholders. Prior to the 1999 taxable year, petitioner reported the net income of the company on his individual income tax returns.

Petitioner told Mr. Mazer not to prepare petitioner's individual income tax returns starting with the 1999 taxable year. Petitioner, however, still had Mr. Mazer prepare the Forms

1120S for the company for years 1999 and thereafter. Beginning with petitioner's 1999 taxable year, petitioner stopped filing returns or making estimated tax payments.

Mr. Mazer did not advise petitioner that he was not required to file individual income tax returns for taxable years 1999 through 2002. Mr. Mazer did not advise petitioner that his income from the company for taxable years 1999 through 2002 was not taxable.

On the Schedule K-1 attached to the Form 1120S for the company for year 1999, petitioner inserted the following statement (statement):

> "The corporation has determined the net income shown on the Schedule K-1 (Form 1120S) does <u>NOT</u> constitute 'gross income' as determined by rules set forth in the Treasury Regulations at 26 CFR (4-1-99) Parts 1.61-1(a) and (b) and 1.931-1(b)(1)-(4). Therefore, since there is <u>NO</u> gross income, the net income shown on the K-1 is <u>NOT</u> reportable on your 1040 as taxable income."

Petitioner placed the statement on the Schedule K-1 after Mr. Mazer had prepared the Form 1120S. Petitioner added other statements similar to the statement to the Forms 1120S for the company's years 2000, 2001, and 2002.

Mr. Mazer did not advise petitioner that placing the statement on the Schedules K-1 relieved him of the requirement to file an individual income tax return. Petitioner did not consult an attorney, accountant, or other tax professional about whether

his income was taxable or whether he was required to file an individual income tax return.

On May 4, 2000, petitioner personally prepared and filed Forms 1040X, Amended U.S. Individual Income Tax Return, for the 1996, 1997, and 1998 taxable years reporting zero income and claiming refunds. In addition to the amended individual income tax returns that petitioner filed, petitioner also sent letters to his payors on April 14, 2000, stating that they had erroneously reported income to the Internal Revenue Service (IRS) and directing that they file corrected information returns with the IRS reflecting that he had no gross income.

Petitioner also filed Forms 4852, Substitute for Form W-2, Wage and Tax Statement, or Form 1099R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRA's, Insurance Contracts, Etc., with the amended individual income tax returns he filed on May 4, 2000. On those Forms 4852 petitioner reported that he had zero income from each payor for the 1996, 1997, and 1998 taxable years.

On May 19, 2000, the IRS sent petitioner a letter informing him that the amended individual income tax returns he filed for the 1996, 1997, and 1998 taxable years were determined to be frivolous documents, that the positions taken on the amended income tax returns were frivolous, and that his refund claims

were denied. On June 22, 2000, petitioner responded by sending the IRS a letter making frivolous arguments. Petitioner's frivolous arguments included, among others, that he derived none of his income from sources outside the United States and therefore his income was not taxable under section 861 and various associated regulations. On August 11, 2000, the IRS sent petitioner notice that his refund claims for the 1996, 1997, and 1998 taxable years were disallowed, informed him that the Tax Court and other Federal courts have repeatedly rejected his position, and again informed him that a penalty of $500 may be assessed under section 6702. On September 4, 2000, the IRS assessed the Frivolous Return Penalty under section 6702 against petitioner for his 1996, 1997, and 1998 taxable years.

During 1999, petitioner purchased a package of documents for $9,000 from John P. Ellis (Mr. Ellis) and Jeff Pollard (Mr. Pollard). Petitioner used the package of documents to establish a sham trust under the name of Bay Point Enterprises (Bay Point). When petitioner purchased the package, petitioner knew that Messrs. Ellis and Pollard were being investigated by a grand jury for promoting the sham trusts.

Petitioner transferred to Bay Point his limited partnership interest in Winthrop Venture Capital that he had acquired in 1997 for $100,000. Petitioner directed Winthrop Venture Capital to

pay significant dividends to Bay Point, which petitioner used to open a bank account in Bay Point's name.

Petitioner appointed Mr. Ellis as the sole "trustee" of Bay Point. Mr. Ellis was incarcerated for contempt approximately 1 month after petitioner purchased the Bay Point "trust" and Mr. Ellis was indicted shortly afterwards. Petitioner was the only person with control over the assets of Bay Point. Petitioner was the only person with signature authority over Bay Point's bank account, and petitioner managed all of Bay Point's property.

In 2002, Mr. Ellis was sentenced to serve 10 and a half years in prison for marketing sham trusts. Petitioner nonetheless continued to use Bay Point. Bay Point has never filed an income tax return and has never paid any taxes.

Petitioner repeatedly told IRS agents that he had no taxable income or gross income and was not required to file income tax returns for his 1999 through 2002 taxable years. Throughout the examination of petitioner's 1999 through 2002 taxable years, petitioner sent multiple documents to the IRS containing frivolous arguments.

On August 14, 2003, the IRS's revenue agent informed petitioner of the IRS's authority to enforce income tax laws and examine books and records, provided petitioner with a document titled "The Truth about Frivolous Tax Arguments," and provided

petitioner with another opportunity to provide requested books and records.  The document titled "The Truth about Frivolous Tax Arguments" provided petitioner with specific legal citations showing why such frivolous tax arguments have been rejected.

Petitioner failed to comply with reasonable requests of the IRS to provide books and records.  Petitioner continued taking a frivolous position throughout his IRS appeals proceedings.

## Discussion

Before we address the substantive issues in the instant case, we must decide whether the record should be reopened to receive new evidence.  After briefs were due in the instant case, petitioner filed a motion requesting a reopening of the record for the introduction of new evidence to support his indebtedness and subsequent contribution of the note proceeds to the capital of the company.

Reopening the record for the submission of additional evidence lies within the discretion of the Court.  Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971).  A court will not grant a motion to reopen the record unless, among other requirements, the evidence is material to the issues involved and probably would change the outcome of the case.  See Coleman v. Commissioner, T.C. Memo. 1989-248, affd. without

published opinion 991 F.2d 795 (6th Cir. 1993)(citing <u>Edgar v.</u> <u>Finley</u>, 312 F.2d 533 (8th Cir. 1963)).

Despite repeated requests for documents by respondent before and at the trial of the instant case, petitioner failed to substantiate his contention that he had basis in the company's stock through the contribution of cash he obtained from a refinancing of the note.[5]  Indeed, petitioner refused to address that issue, preferring to rely on frivolous arguments.

We deny petitioner's motion to reopen the record because, among other reasons, it is prejudicial to respondent, but note that, even if we were to admit the documents petitioner wishes to submit, the documents fail to support petitioner's contention that he is personally liable on a refinancing of the note, that the company was relieved of its debt pursuant to the note, and that he actually contributed the proceeds of the refinancing of the note to the capital of the company.

We do not address with somber reasoning and copious citations of precedent petitioner's arguments that he is not required to file tax returns or pay income tax, as to do so might suggest that petitioner's arguments possess some degree of colorable merit.  See <u>Crain v. Commissioner</u>, 737 F.2d 1417, 1417

---

[5]Petitioner claims he has basis in his stock of the company sufficient to offset capital gains distributions he received from the company.

(5th Cir. 1984).  Accordingly, we hold that petitioner is liable for the amounts of the deficiencies in his income tax set forth in the notices of deficiency for the 1999 through 2002 taxable years.

We address next whether petitioner is liable for the fraud penalty pursuant to section 6651(f).  In deciding whether a failure to file is fraudulent under section 6651(f), we consider the same elements that are considered in imposing the addition to tax for fraud under former section 6653(b) and present section 6663.  Clayton v. Commissioner, 102 T.C. 632, 653 (1994). Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing.  Powell v. Granquist, 252 F.2d 56 (9th Cir. 1958); Miller v. Commissioner, 94 T.C. 316, 332 (1990).  The Commissioner bears the burden of demonstrating fraud by clear and convincing evidence.  Sec. 7454(a); Rule 142(b).  The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. per curiam T.C. Memo. 1985-63; Estate of Pittard v. Commissioner, 69 T.C. 391 (1977).  To carry the burden of proof on the issue of fraud, the Commissioner must show, for each year in issue, that (1) an underpayment of tax exists and (2) some portion of the underpayment is due to fraud. Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989).

With respect to the first prong of the test, the Commissioner need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each year in issue is attributable to fraud.  Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274.  The Commissioner may not, however, simply rely upon the taxpayer's failure to show error in the determinations of the deficiencies.  DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Petzoldt v. Commissioner, supra at 700.

The Commissioner must show that the taxpayer intended to evade taxes known or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Korecky v. Commissioner, supra at 1568; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).  Fraud is not to be imputed or presumed, but rather must be established by some independent evidence of fraudulent intent.  Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). However, fraud need not be established by direct evidence, which is rarely available, but may be proved by surveying the taxpayer's entire course of conduct and drawing reasonable inferences therefrom.  Spies v. United States, 317 U.S. 492, 499

(1943); <u>Korecky v. Commissioner</u>, <u>supra</u> at 1568; <u>Rowlee v. Commissioner</u>, <u>supra</u> at 1123. Although fraud may not be found under "circumstances which at the most create only suspicion", <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 700, the intent to defraud may be inferred from any conduct the likely effect of which would be to conceal, mislead, or otherwise prevent the collection of taxes believed to be owing, <u>Spies v. United States</u>, <u>supra</u> at 499.

Courts have relied on a number of indicia or badges of fraud in deciding whether to sustain the Commissioner's determinations with respect to the additions to tax for fraud. Although no single factor may be necessarily sufficient to establish fraud, the existence of several indicia may be persuasive circumstantial evidence of fraud. <u>Solomon v. Commissioner</u>, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603; <u>Beaver v. Commissioner</u>, <u>supra</u> at 93.

Circumstantial evidence that may give rise to a finding of fraudulent intent includes: Understatement of income; inadequate records; failure to file tax returns; concealment of assets; failure to cooperate with tax authorities; filing false Forms W-4; failure to make estimated tax payments; and engaging in illegal activity. <u>Bradford v. Commissioner</u>, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601. The "badges of fraud" are nonexclusive. <u>Miller v. Commissioner</u>, <u>supra</u> at 334.

The taxpayer's background and the context of the events in question may be considered as circumstantial evidence of fraud. Spies v. United States, supra at 497; Plunkett v. Commissioner, supra at 303.

The instant case involves numerous badges of fraud. Petitioner is an intelligent and well-educated businessman, who prior to 1999 complied with applicable tax laws. Petitioner failed to file tax returns or make tax payments in taxable years 1999 through 2002. Petitioner attempted to conceal assets and income in a sham trust. Petitioner failed to cooperate with reasonable requests for documents. We conclude that the record shows by clear and convincing evidence that petitioner understated his income and that there are sufficient badges of fraud to show that petitioner fraudulently intended to understate his income. We therefore hold that petitioner is liable for the fraud penalty pursuant to section 6651(f) for taxable years 1999, 2000, and 2001.

Pursuant to section 7491(c), respondent bears the burden of production with respect to the additions to tax under sections 6651(a)(1), 6651(a)(2), and 6654. Consequently, respondent must produce sufficient evidence to demonstrate that the addition to tax is appropriate. See Higbee v. Commissioner, 116 T.C. 438, 446

(2001).  Once respondent meets his burden of production, petitioner must produce sufficient evidence to persuade the Court that respondent's determination is incorrect.  Id. at 447.

Section 6651(a)(1) imposes an addition to tax for failure to file an income tax return.  A taxpayer may be relieved of the addition, however, if he can demonstrate that the "failure is due to reasonable cause and not due to willful neglect".  Id. Willful neglect means conscious intentional failure or reckless indifference.  United States v. Boyle, 469 U.S. 241, 245 (1985). Proced. & Admin. Reg. section 301.6651-1(c)(1) states that if a taxpayer exercises ordinary business care and prudence and is nevertheless unable to file on time, then the delay is due to reasonable cause.

Respondent has carried his burden of production, showing that petitioner failed to file a return for taxable year 2002. Petitioner has failed to demonstrate reasonable cause for his failure to file a return and failure to pay the tax due, citing only frivolous, protester arguments.  See Yoder v. Commissioner, T.C. Memo. 1990-116 (holding misguided interpretations of the Constitution are not reasonable cause).  The addition to tax under section 6651(a)(1) for taxable year 2002 is accordingly sustained.

Section 6651(a)(2) provides for an addition to tax in instances where there is a failure to pay the amount of tax shown on a return, and it applies only when an amount of tax is shown on a return. <u>Cabirac v. Commissioner</u>, 120 T.C. 163, 170 (2003). Petitioner did not file a return or pay taxes for any of the years 1999 through 2002, and respondent prepared substitute returns pursuant to section 6020(b). Under section 6651(g)(2), a return prepared by the Secretary under section 6020(b) is treated as the return filed by the taxpayer for purposes of determining an addition to tax under section 6651(a)(2). <u>Cabirac v. Commissioner</u>, <u>supra</u> at 170. We hold that petitioner is liable for the additions to tax under section 6651(a)(2) for taxable years 1999 through 2002.

Section 6654(a) imposes an addition to tax for failure to pay estimated income tax. Section 6654 applies where prepayments of tax, either through withholdings or by making estimated quarterly payments, do not equal the percentage of total liability required under the statute,[6] unless one of the several exceptions under section 6654(e) applies. <u>Niedringhaus</u>

---

[6]Sec. 6654(d) requires quarterly installment payments of 25 percent of the required annual payment. Sec. 6654(d)(1)(A). The required annual payment is the lesser of 90 percent of the tax due for the year in issue or 100 percent of the tax shown on the return in the preceding year. Sec. 6654(d)(1)(B).

v. Commissioner, 99 T.C. 202, 222 (1992).  Petitioner reported a tax liability in 1998 of $9,258 and owed tax in each of years in issue, yet failed to make any estimated payments.  We therefore hold that petitioner is liable for the addition to tax under section 6654 for taxable years 1999 through 2002.

Section 6673(a)(1) provides that this Court may require the taxpayer to pay a penalty not in excess of $25,000 whenever it appears to this Court:  (a) The proceedings were instituted or maintained by the taxpayer primarily for delay; (b) the taxpayer's position is frivolous or groundless; or (c) the taxpayer unreasonably failed to pursue available administrative remedies.  Respondent has moved that the Court impose a penalty in the instant case.  The record indicates that petitioner was warned that this Court could impose a penalty if he persisted in raising frivolous tax protester arguments.  Despite being warned, petitioner raised frivolous arguments throughout the Appeals process, in his petition to this Court, and in his briefs.  Accordingly, we shall impose a $10,000 penalty on petitioner pursuant to section 6673.

To reflect the foregoing,

An appropriate order and decision will be entered.